PERRY HOMES, A Joint Venture, Home Owners Multiple Equity, Inc., and Warranty Underwriters Insurance Company, Petitioners,

v.

Robert E. CULL and S. Jane Cull, Respondents.

No. 05–0882.

Supreme Court of Texas.

Argued March 20, 2007.

Delivered May 2, 2008.

Rehearing Denied Aug. 29, 2008.

584

Geoffrey H. Bracken, Gardere Wynne Sewell, L.L.P., Houston, TX, Stacy R. Obenhaus, Gardere Wynne Sewell LLP, Dallas, TX, Kent Hance, Hance Scarborough Wright Woodward & Weisbart LLP, Austin, TX, Gary W. Javore, Johnson Cristopher Javore & Cochran, Inc., San Antonio, TX, for Petitioners.

Thomas M. Michel, Griffith, Jay, & Michel LLP, Fort Worth, TX, Evan (Van) Lane Shaw, Law Offices of Van Shaw, Dallas, TX, for Respondent.

M. Scott Norman Jr., Texas Association of Builders, Austin, TX, for Amicus Curiae.

Justice BRISTER delivered the opinion of the Court, in which Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, and Justice MEDINA joined, and in which Chief Justice JEFFERSON, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined as to parts I–V.

 Since 1846, Texas law has provided that parties to a dispute may choose to arbitrate rather than litigate.[1] But that choice cannot be abused; a party cannot substantially invoke the litigation process and then switch to arbitration on the eve of trial.[2] There is a strong presumption against waiver of arbitration,[3] but it is not irrebuttable and was plainly rebutted here. The Plaintiffs vigorously opposed (indeed spurned) arbitration in their pleadings and in open court; then they requested hundreds of items of merits-based information and conducted months of discovery under the rules of court; finally only four days before the trial setting they changed their minds and decided they would prefer to arbitrate after all. Having gotten what they wanted from the litigation process, they could not switch to arbitration at the last minute like this.

The Plaintiffs argue—and we agree—that sending them back to the trial court not only deprives them of a substantial award but also wastes the time and money spent in arbitration. But they knew of this risk when they requested arbitration at the last minute because all of the Defendants objected. Accordingly, we vacate the arbitration award and remand the case to the trial court for a prompt trial.

## I. Background

In 1996, Robert and Jane Cull bought a house from Perry Homes for $233,730. They also bought a warranty from Home Owners Multiple Equity, Inc. and Warranty Underwriters Insurance Company. The warranty agreement included a broad arbitration clause providing that all disputes the Culls might have against Perry Homes or the warranty companies were subject to the Federal Arbitration Act, and would be submitted to the American Arbi-

---

1. *See L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 351 (Tex.1977).

2. *See Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 348 (5th Cir.2004); *ComTech Assocs. v. Computer Assocs. Int'l, Inc.,* 938 F.2d 1574, 1576–77 (2d Cir.1991); *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1160 (5th Cir.1986); *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 764 (Tex.2006).

3. *See, e.g., In re Vesta,* 192 S.W.3d at 763; *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704–05 (Tex.1998); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89–90 (Tex.1996).

tration Association (AAA) or another arbitrator agreed upon by the parties.[4]

Over the next several years, the home suffered serious structural and drainage problems. According to the Culls, the Defendants spent more effort shifting blame than repairing the home. When the Culls sued in October 2000, the warranty companies (but not Perry Homes) immediately requested arbitration; the Culls vigorously opposed it, and no one ever pressed for a ruling. At the same time, the Culls' attorneys began seeking extensive discovery from all of the Defendants.

After most of the discovery was completed and the case was set for trial, the Culls changed their minds about litigating. Instead they asked the trial court to compel arbitration under precisely the same clause and conditions to which they had originally objected. The trial judge expressed reservations, saying:

> I really have a problem with people who have competent counsel who wait 14 months and after all this much effort in the courthouse has taken place, to come in and say that they have not waived that arbitration. That arbitration clause was there when the lawsuit was filed.

Nevertheless, the trial court ordered arbitration because the Defendants had not shown any prejudice from litigation conduct:

> [A]ll I have heard from [defense counsel] insofar as what is the prejudice suffered by people you represent is that they have participated in litigation activities that may or may not have been required by the arbitrator. So without anything further, I am going to grant the motion to abate the case for arbitration.

The order was signed December 6, 2001, four days before the case was set for trial. The Defendants filed petitions for mandamus in the court of appeals and this Court, both of which were denied without opinion within a few days.[5]

After a year in arbitration, on December 24, 2002, the arbitrator awarded the Culls $800,000, including restitution of the purchase price of their home ($242,759), mental anguish ($200,000), exemplary damages ($200,000), and attorney's fees ($110,000). The Defendants moved to vacate the award, again arguing (among other things) that the case should never have been sent to arbitration after so much activity in court. The trial court overruled the objection, confirmed the award, and added postjudgment interest duplicating that already in the award; the court of appeals affirmed after deleting the duplicative interest.[6] We granted the Defendants' petition to consider whether the arbitration award should be set aside because the Culls waived their right to arbitration.

## II. When Should Orders Compelling Arbitration Be Reviewed?

At the outset, the Culls assert it is too late to review the trial court's order referring this case to arbitration. First, they argue the pre-arbitration mandamus proceedings establish the law of the case

4. The warranty provided:
Any "unresolved dispute" (defined below) that you may have with [Perry Homes or the warranty companies] shall be submitted to binding arbitration governed by the procedures of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.... The dispute will be submitted to the American Arbitration Association, or such other independent arbitration service as is agreeable to the [warranty administrator] and you....

5. Perry Homes sought mandamus in the court of appeals on April 11, 2002, and was denied 7 days later. It refiled in this Court on April 26, and was denied 13 days later.

6. 173 S.W.3d 565, 568.

and preclude the Defendants from raising the same arguments now. We recently rejected this argument, holding that as mandamus is a discretionary writ, "its denial, without comment on the merits, cannot deprive another appellate court from considering the matter in a subsequent appeal."[7] Mandamus is only available when a final appeal would be inadequate;[8] if filing for mandamus precluded a final appeal, that requirement would be self-fulfilling. Because the earlier proceedings here were denied without comment on the merits, they do not foreclose our review.

■ Second, the Culls argue that an order compelling arbitration can only be reviewed *before* arbitration occurs. The Culls address none of the cases in which this Court and the United States Supreme Court have reviewed such orders *after* arbitration.[9] Nor do they address the general rule that parties waive nothing by foregoing interlocutory review and awaiting a final judgment to appeal.[10]

■ But most important, the Culls do not address section 16 of the Federal Arbitration Act, which expressly prohibits pre-arbitration appeals:

> Except as otherwise provided in section 1292(b) of title 28 [providing for certified questions to federal circuit courts], an appeal may not be taken from an interlocutory order ... directing arbitration to proceed under section 4 of this title [providing for orders compelling arbitration]. . . . [11]

This ban on interlocutory appeals of orders compelling arbitration was added by Congress in 1988 to prevent arbitration from bogging down in preliminary appeals.[12] We have held that routine mandamus review of such orders in state court would frustrate this federal law.[13]

---

7. *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex.2007).

8. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

9. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Chambers*, 242 S.W.3d at 31; *see also Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959) (invalidating portion of award regarding nonarbitrable issues); *Fortune v. Killebrew*, 86 Tex. 172, 23 S.W. 976, 978 (1893) (same).

10. *Pope v. Stephenson*, 787 S.W.2d 953, 954 (Tex.1990) ("The decision not to pursue the extraordinary remedy of mandamus does not prejudice or waive a party's right to complain on appeal."); *accord, City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 756 (Tex.2003); *Walker v. Packer*, 827 S.W.2d 833, 842 n.9 (Tex.1992).

11. *See* 9 U.S.C. § 16(b)(2); *see also* Tex. Civ. Prac. & Rem.Code § 171.098 (providing for interlocutory appeal only of orders denying motion to compel arbitration).

12. *See* David D. Siegel, *Appeals from Arbitrability Determinations*, Practice Commentary to 9 U.S.C. § 16 ("The mission of § 16 is to assure that if the district court does determine that arbitration is called for, the court system's interference with the arbitral process will terminate then and there, leaving the arbitration free to go forward. To accomplish this, § 16 provides in general that there may be no appeal from the pro-arbitration determination until after the arbitration has gone forward to a final award."); *see also* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3914.17 (2d ed.1992).

13. *In re Palacios*, 221 S.W.3d 564, 565 (Tex. 2006). Courts may review an order compelling arbitration if the order also dismisses the underlying litigation so it is final rather than interlocutory. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 87 n.2, 121 S.Ct. 513; *Childers v. Advanced Found. Repair, L.P.*, 193 S.W.3d 897, 898 (Tex.2006). As we noted in *Palacios*, the Fifth Circuit has indicated it may review a district court's decision to stay rather than dismiss if a petitioner shows "clearly and indisputably that the district court did not have the discretion to stay the proceedings

■ The Culls assert that post-arbitration review is unavailable because an arbitration award can be vacated only for statutory grounds like corruption, fraud, or evident partiality.[14] But reviewing the trial court's initial referral to arbitration is not the same as reviewing the arbitrator's final award; as the United States Supreme Court has held, courts conduct ordinary review of the former and deferential review only of the latter.[15]

We agree that post-arbitration review of referral may create (as the Culls allege) a "huge waste of the parties' resources." But if review is available before arbitration, parties may also waste resources appealing every referral when a quick arbitration might settle the matter. Frequent pre-arbitration review would inevitably frustrate Congress's intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."[16] We recognize the potential for waste, but that is a risk a party must take if it moves for arbitration after substantially invoking the litigation process.

## III. Do Courts or Arbitrators Decide Waiver?

■ The Culls also assert that waiver of arbitration by litigation conduct is an issue to be decided by arbitrators rather than courts. To the contrary, this Court and the federal courts have held it is a question of law for the court.[17] Rather than referring such claims to arbitrators, we have decided them ourselves at least eight times,[18] as does every federal circuit court.[19]

pending arbitration." *Id.* (citing *Apache Bohai Corp., LDC v. Texaco China, B.V.,* 330 F.3d 307, 310–11 (5th Cir.2003)).

14. *See* 9 U.S.C. § 10(a).

15. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 947–48, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The Court noted that a different rule would apply if the parties clearly and unmistakably indicated in the arbitration contract that the arbitrator should decide arbitrability, *id.,* but there is no such indication in this contract.

16. *Preston v. Ferrer,* —— U.S. ——, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

17. *In re Serv. Corp. Int'l,* 85 S.W.3d 171, 174 (Tex.2002); *In re Bruce Terminix Co.,* 988 S.W.2d 702, 703–04 (Tex.1998); *accord, In re Citigroup, Inc.,* 376 F.3d 23, 26 (1st Cir.2004); *Thyssen, Inc. v. Calypso Shipping Corp., S.A.,* 310 F.3d 102, 104 (2d Cir.2002); *Ivax Corp. v. B. Braun of Am., Inc.,* 286 F.3d 1309, 1316 n. 18 (11th Cir.2002); *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159 (5th Cir. 1986).

18. *See In re Bank One, N.A.,* 216 S.W.3d 825, 827 (Tex.2007) (finding no waiver under FAA); *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 783 (Tex.2006) (same); *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 764 (Tex.2006) (same); *In re Serv. Corp. Int'l,* 85 S.W.3d at 174 (same); *In re Bruce Terminix Co.,* 988 S.W.2d at 704–05 (same); *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574 (Tex. 1999) (same); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89–90 (Tex.1996) (same); *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995).

19. *See, e.g., Creative Solutions Group, Inc. v. Pentzer Corp.,* 252 F.3d 28, 32–34 (1st Cir. 2001); *Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 456 (2d Cir.1995); *Wood v. Prudential Ins. Co. of Am.,* 207 F.3d 674, 680 (3d Cir.2000); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 96 (4th Cir.1996); *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 329 (5th Cir.1999); *Germany v. River Terminal Ry. Co.,* 477 F.2d 546, 547 (6th Cir.1973); *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.,* 304 F.3d 753, 758 (7th Cir.2002); *Ritzel Commc'ns v. Mid–American Cellular,* 989 F.2d 966, 969–71 (8th Cir.1993); *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.,* 586 F.2d 143, 146 (9th Cir. 1978); *Metz v. Merrill Lynch, Pierce, Fenner &*

The Culls argue this was all changed in 2002 by *Howsam v. Dean Witter Reynolds*, in which the United States Supreme Court said the "presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'"[20] For several reasons, we disagree that this single sentence changed the federal arbitration landscape.

First, "waiver" and "delay" are broad terms used in many different contexts. *Howsam* involved the National Association of Securities Dealers' six-year limitations period for arbitration claims, not waiver by litigation conduct; indeed, it does not appear the United States Supreme Court has ever addressed the latter kind of waiver. Although the federal courts do not defer to arbitrators when waiver is a question of litigation conduct, they consistently do so when waiver concerns limitations periods or waiver of particular claims or defenses.[21] As *Howsam* involved the latter rather than the former,[22] its reference to waiver must be read in that context.

Second, the *Howsam* court specifically stated that "parties to an arbitration contract would normally expect a forum-based decisionmaker to decide forum-specific procedural gateway matters."[23] Thus, the NASD's six-year limitations rule in that case was a gateway matter for the NASD arbitrator because "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it."[24] By contrast, when waiver turns on conduct in court, the court is obviously in a better position to decide whether it amounts to waiver.[25] "Contracting parties would expect the court to decide whether one party's conduct before the court waived the right to arbitrate."[26]

*Smith, Inc.*, 39 F.3d 1482, 1489–90 (10th Cir. 1994); *Ivax Corp.*, 286 F.3d at 1316; *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 777–78 (D.C.Cir. 1987).

**20.** 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

**21.** See, e.g., *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 447, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (holding whether arbitration could proceed by class action was question for arbitrator); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding question whether steps of grievance procedure prerequisite to arbitration had been completed was for arbitrator); *Sleeper Farms v. Agway, Inc.*, 506 F.3d 98, 104 (1st Cir.2007) (noting question whether breach of contract voided arbitration clause would normally be for arbitrator); *United Steelworkers of Am. v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 422 (6th Cir.2007) (holding question of timely demand for arbitration was for

arbitrator); *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220–21 (10th Cir.2005) (holding question whether plaintiffs waived forum selection clause by filing suit elsewhere was for arbitrator); *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871–72 (8th Cir.2004) (holding questions of timely demand and waiver by failing to initiate arbitration were for arbitrator); *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 457 (4th Cir. 1997) (holding question of timely demand for arbitration was for arbitrator); *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 231–32 (3d Cir.1997) (holding question of waiver of substantive state law rights was for arbitrator).

**22.** See *Howsam*, 537 U.S. at 81–82, 123 S.Ct. 588.

**23.** *Id.* at 86, 123 S.Ct. 588.

**24.** *Id.* at 85, 123 S.Ct. 588.

**25.** *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed.Appx. 462, 464 (5th Cir.2004).

**26.** *Id.*

Third, as the *Howsam* Court itself stated, parties generally intend arbitrators to decide matters that "grow out of the dispute and bear on its final disposition," while they intend courts to decide gateway matters regarding "whether the parties have submitted a particular dispute to arbitration."[27] Waiver of a substantive claim or delay beyond a limitations deadline could affect final disposition, but waiver by litigation conduct affects only the gateway matter of where the case is tried.[28]

■ Finally, arbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause.[29] Thus, for example, arbitrators must decide if an entire contract was fraudulently induced, while courts must decide if an arbitration clause was.[30] As waiver by litigation conduct goes solely to the arbitration clause rather than the whole contract, consistency suggests it is an issue for the courts.

Every federal circuit court that has addressed this issue since *Howsam* has continued to hold that substantial invocation of the litigation process is a question for the court rather than the arbitrator—including the First,[31] Third,[32] Fifth,[33] and Eighth Circuits.[34] Legal commentators appear to agree.[35] So do we.

## IV. When Is the Litigation Process Substantially Invoked?

We have said on many occasions that a party waives an arbitration clause by sub-

27. *Howsam*, 537 U.S. at 83–84, 123 S.Ct. 588 (internal quotations omitted); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451–52, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003).

28. *See Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 13 (1st Cir.2005).

29. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("We reaffirm today that . . . a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

30. *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 190 (Tex.2007) (holding claim that contract was illusory went to contract as a whole and thus was for arbitrators); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex.2001) ("The de los Santoses assert the defenses of unconscionability, duress, fraudulent inducement, and revocation. We again note that these defenses must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration."); *see also In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex.2007) (holding claim of "unclean hands" that went to contract as a whole rather than arbitration clause was question for arbitrators).

31. *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 45–47 (1st Cir.2005); *Marie*, 402 F.3d at 13–14; *In re Citigroup, Inc.*, 376 F.3d 23, 27–29 (1st Cir.2004); *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 12–14 (1st Cir.2003); *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 61–63 (1st Cir.2003).

32. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–21 (3d Cir.2007).

33. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344–47 (5th Cir.2004); *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed.Appx. 462, 464 (5th Cir.2004).

34. *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090–94 (8th Cir.2007); *Kelly v. Golden*, 352 F.3d 344, 349–50 (8th Cir. 2003). The Eighth Circuit did refer to *Howsam* in one case as requiring waiver to be referred to arbitrators, but that case involved an allegation of waiver by previous arbitration, not litigation. *See Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 463–66 (8th Cir.2003).

35. *See* David LeFevre, Note, *Whose Finding is it Anyway?: The Division of Labor Between Courts and Arbitrators with Respect to Waiver*, 2006 J. DISP. RESOL. 305, 316–17 (2006); Stephen K. Huber, *The Arbitration Jurisprudence of the Fifth Circuit, Round II*, 37 TEX. TECH L.REV. 531, 542 (2005).

stantially invoking the judicial process to the other party's detriment or prejudice.[36] Due to the strong presumption against waiver of arbitration, this hurdle is a high one.[37] To date, we have never found such a waiver, holding in a series of cases that parties did not waive arbitration by:

- filing suit;[38]

- moving to dismiss a claim for lack of standing;[39]

- moving to set aside a default judgment and requesting a new trial;[40]

- opposing a trial setting and seeking to move the litigation to federal court;[41]

- moving to strike an intervention and opposing discovery;[42]

- sending 18 interrogatories and 19 requests for production;[43]

- requesting an initial round of discovery, noticing (but not taking) a single deposition, and agreeing to a trial resetting;[44] or

- seeking initial discovery, taking four depositions, and moving for dismissal based on standing.[45]

These cases well illustrate the kind of conduct that falls short. But because none amounted to a waiver, they are less instructive about what conduct suffices. We have stated that "allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial" would be sufficient.[46] But what if (as in this case) only two out of these three are met? And how much is "full discovery"?

We begin by looking to the standards imposed by the federal courts. They decide questions of waiver by applying a totality-of-the-circumstances test on a case-by-case basis.[47] In doing so, they

---

**36.** *In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex.2007); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex.2006); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex.2006); *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex.2002); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex.1999); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex.1996); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex. 1995).

**37.** *In re Bank One, N.A.*, 216 S.W.3d at 827; *In re D. Wilson Constr. Co.*, 196 S.W.3d at 783; *In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 763; *In re Serv. Corp. Int'l*, 85 S.W.3d at 174; *In re Bruce Terminix Co.*, 988 S.W.2d at 704; *EZ Pawn Corp.*, 934 S.W.2d at 89.

**38.** *In re D. Wilson Constr. Co.*, 196 S.W.3d at 783.

**39.** *In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 764.

**40.** *In re Bank One, N.A.*, 216 S.W.3d at 827.

**41.** *In re Serv. Corp. Int'l*, 85 S.W.3d at 174–75.

**42.** *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex.1995).

**43.** *In re Bruce Terminix Co.*, 988 S.W.2d at 704.

**44.** *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex.1996).

**45.** *In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 763 (holding requests for disclosure, four depositions, and request for production did not waive arbitration absent proof regarding extent of requests and whether they addressed merits or arbitrability).

**46.** *Id.* at 764.

**47.** *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 (1st Cir.2005) ("[E]ach case is to be judged on its particular facts."); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir.2004) ("Ultimately, however, the question of what constitutes a waiver of the right of arbitration depends on the facts of each case."); *accord, Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002); *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650 (7th Cir.2000); *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*,

consider a wide variety of factors including:

- whether the movant was plaintiff (who chose to file in court) or defendant (who merely responded); [48]
- how long the movant delayed before seeking arbitration; [49]
- whether the movant knew of the arbitration clause all along; [50]
- how much pretrial activity related to the merits rather than arbitrability or jurisdiction; [51]
- how much time and expense has been incurred in litigation; [52]
- whether the movant sought or opposed arbitration earlier in the case; [53]
- whether the movant filed affirmative claims or dispositive motions; [54]
- what discovery would be unavailable in arbitration; [55]
- whether activity in court would be duplicated in arbitration; [56] and
- when the case was to be tried.[57]

Of course, all these factors are rarely presented in a single case. Federal courts have found waiver based on a few, or even a single one.[58]

■ We agree waiver must be decided on a case-by-case basis, and that courts should look to the totality of the circumstances. Like the federal courts, this Court has considered factors such as:

- when the movant knew of the arbitration clause; [59]

821 F.2d 772, 774 (D.C.Cir.1987); *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420 (5th Cir.1985).

**48.** *Grumhaus,* 223 F.3d at 650; *see also Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 391 (7th Cir.1995).

**49.** *PAICO,* 383 F.3d at 346; *In re Citigroup, Inc.,* 376 F.3d 23, 26 (1st Cir.2004); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1489 (10th Cir.1994); *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 926 (3d Cir.1992).

**50.** *Brown v. Dillard's, Inc.,* 430 F.3d 1004, 1012 (9th Cir.2005); *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.,* 380 F.3d 200, 206 (4th Cir.2004).

**51.** *PAICO,* 383 F.3d at 346; *Kelly v. Golden,* 352 F.3d 344, 349 (8th Cir.2003); *Hoxworth,* 980 F.2d at 926; *Gilmore v. Shearson/American Express Inc.,* 811 F.2d 108, 112 (2d Cir.1987); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1150–51 (5th Cir.1985).

**52.** *PAICO,* 383 F.3d at 346; *Patten Grading,* 380 F.3d at 205; *In re Citigroup,* 376 F.3d at 26; *Metz,* 39 F.3d at 1489; *Hoxworth,* 980 F.2d at 927.

**53.** *Hoxworth,* 980 F.2d at 927; *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 938 F.2d 1574, 1577 (2d Cir.1991); *E.C. Ernst, Inc. v.*

*Manhattan Constr. Co.,* 551 F.2d 1026, 1040–41 (5th Cir.1977); *Blake Constr. Co. v. U.S. for Use and Benefit of Lichter,* 252 F.2d 658, 662 (5th Cir.1958).

**54.** *In re Citigroup,* 376 F.3d at 26; *Metz,* 39 F.3d at 1489.

**55.** *In re Citigroup,* 376 F.3d at 26; *Kelly,* 352 F.3d at 349; *Metz,* 39 F.3d at 1489.

**56.** *Kelly,* 352 F.3d at 349; *Metz,* 39 F.3d at 1489.

**57.** *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995); *Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 468 (10th Cir.1988) (finding waiver as movant waited until five weeks before trial date to move to compel).

**58.** *See, e.g., Restoration Preserv. Masonry, Inc. v. Grove Eur. Ltd.,* 325 F.3d 54, 62 (1st Cir.2003) (finding three-year delay alone sufficient to establish waiver); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 391 (7th Cir.1995) (finding removal to federal court alone sufficient to establish waiver).

**59.** *See EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 88–89 (Tex.1996) (finding no waiver as defendant did not discover existence of arbitration agreement for almost a year).

- how much discovery has been conducted; [60]

- who initiated it; [61]

- whether it related to the merits rather than arbitrability or standing; [62]

- how much of it would be useful in arbitration; [63] and

- whether the movant sought judgment on the merits.[64]

Thus, we disagree with the court of appeals that waiver is ruled out in this case solely because the Culls "did not ask the court to make any judicial decisions on the merits of their case." [65] While this is surely a factor,[66] it is not the only one. Waiver involves substantial invocation of the judicial *process*, not just judgment on the merits.

We also disagree with the Defendants that different standards should apply to plaintiffs and defendants. As parties may begin arbitration without a court order, it is certainly relevant that a plaintiff chose to file suit instead. But Texas procedure also contemplates that parties may file suit in order to compel arbitration.[67] Thus, while the movant's status is a factor to consider, it does not alone justify a finding of waiver or change the basic nature of the totality-of-the-circumstances test.[68]

We recognize, as we have noted before, "the difficulty of uniformly applying a test based on nothing more than the totality of the circumstances." [69] But there appears to be no better test for "substantial invocation." [70] As the United States Supreme Court has said about minimum contacts, tests based on "reasonableness" are never susceptible to mechanical application—"few answers will be written in black and white[;] [t]he greys are domi-

**60.** *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 763 (Tex.2006).

**61.** *Id.*

**62.** *Id.*

**63.** *Id.; In re Bruce Terminix Co.,* 988 S.W.2d 702, 704 (Tex.1998).

**64.** *In re Bruce Terminix Co.,* 988 S.W.2d at 704.

**65.** 173 S.W.3d at 570.

**66.** *See In re Bruce Terminix Co.,* 988 S.W.2d at 704.

**67.** *See, e.g.,* Tex. Civ. Prac. & Rem.Code § 171.021(a) ("A court shall order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate.").

**68.** *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 783 (Tex.2006); *accord, United Computer Sys., Inc. v. AT & T Corp.,* 298 F.3d 756, 764 (9th Cir.2002).

**69.** *See R.R. St. & Co. v. Pilgrim Enters., Inc.,* 166 S.W.3d 232, 242–43 (Tex.2005) (quotation marks omitted) (applying totality-of-the-circumstances test in determining whether party "otherwise arranged" to dispose of hazardous waste).

**70.** *See Burton–Dixie Corp. v. Timothy McCarthy Constr. Co.,* 436 F.2d 405, 407–08 (5th Cir.1971) ("There is no set rule, however, as to what constitutes a waiver or abandonment of the arbitration agreement. The question depends upon the facts of each case and usually must be determined by the trier of facts."); Joel E. Smith, Annotation, *Defendant's Participation in Action as Waiver of Right to Arbitration of Dispute Involved Therein,* 98 A.L.R.3d 767, 771 (1980) ("In those cases involving the issue of whether the defendant's participation in an action constitutes a waiver of the right to arbitrate the dispute involved therein, no general rules are readily apparent for determining waiver other than the general adherence by the courts to the principle that waiver is to be determined from the particular facts and circumstances of each case. . . .").

nant and even among them the shades are innumerable." [71] How much litigation conduct will be "substantial" depends very much on the context; three or four depositions may be all the discovery needed in one case,[72] but purely preliminary in another.[73]

Moreover, this test is quite similar to one we have long recognized and recently applied to arbitration—estoppel. Estoppel is a defensive theory barring parties from asserting a claim or defense when their representations have induced "action or forbearance of a definite and substantial character" and "injustice can be avoided only by enforcement." [74] In arbitration cases, we have held a nonparty who enjoys substantial direct benefits from a contract may be estopped from denying an arbitration clause in the same contract.[75] By the same token, a party who enjoys substantial direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils.

The answer to most questions regarding arbitration "flow inexorably from the fact that arbitration is simply a matter of contract between the parties." [76] Like any other contract right, arbitration can be waived if the parties agree instead to resolve a dispute in court. Such waiver can be implied from a party's conduct, although that conduct must be unequivocal.[77] And in close cases, the "strong presumption against waiver" should govern.[78]

## V. Is a Showing of Prejudice Required?

Although convinced that the Culls had substantially invoked the litigation process, the trial court compelled arbitration because the Defendants did not prove an arbitrator would not have allowed the same discovery. "Even substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party proves that it suffered prejudice as a result." [79] On at least eight occasions, we have said prejudice is a necessary requirement of waiver by litigation

71. *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (quoting *Estin v. Estin*, 334 U.S. 541, 545, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948)).

72. *See, e.g.,* Tex.R. Civ. P. 190.2(c)(2) (limiting parties in Level 1 cases to six hours of depositions).

73. *See, e.g., In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 763 (Tex.2006) (holding four depositions did not waive arbitration as record did not show whether they were limited or extensive or whether they addressed merits or merely arbitrability).

74. *Trammell Crow Co. No. 60 v. Harkinson,* 944 S.W.2d 631, 636 (Tex.1997); *see English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983); *Moore Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936–37 (Tex.1972); *Wheeler v. White,* 398 S.W.2d 93, 96 (Tex.1965); Restatement (Second) Of Contracts § 90 (1979).

75. *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 133–35 (Tex.2005); *accord, Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 305 (Tex.2006).

76. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

77. *See Van Indep. Sch. Dist. v. McCarty,* 165 S.W.3d 351, 353 (Tex.2005); *First Valley Bank of Los Fresnos v. Martin,* 144 S.W.3d 466, 471 (Tex.2004); *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex.2003); *Equitable Life Assurance Soc'y of U.S. v. Ellis,* 105 Tex. 526, 152 S.W. 625, 628 (1913).

78. *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 783 (Tex.2006); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex.1996).

79. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704 (Tex.1998).

conduct.[80]

■ The Defendants ask us to reconsider this requirement. They point out that Texas law does not require a showing of prejudice for waiver, but only an intentional relinquishment of a known right.[81] Waiver "is essentially unilateral in its character" and "no act of the party in whose favor it is made is necessary to complete it."[82] Thus, they argue we cannot impose a waiver rule for arbitration contracts that does not apply to all others.[83]

We decline the Defendants' invitation based on both federal and state law. The Defendants say the federal courts are split on the issue, but the split is not very wide. Of the twelve regional circuit courts, ten require a showing of prejudice,[84] and the other two treat it as a factor to consider.[85] We have noted before the importance of keeping federal and state arbitration law consistent.[86]

**80.** *In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex.2007); *In re D. Wilson Constr. Co.*, 196 S.W.3d at 783; *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex.2006); *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex.2002); *In re Bruce Terminix Co.*, 988 S.W.2d at 704; *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex.1999); *EZ Pawn Corp.*, 934 S.W.2d at 89; *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex.1995).

**81.** *See In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex.2006); *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987); *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980); *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex.1967); *Texas & P. Ry. Co. v. Wood*, 145 Tex. 534, 199 S.W.2d 652, 656 (1947); *Kennedy v. Bender*, 104 Tex. 149, 135 S.W. 524, 526 (1911); *see also Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir.1995) (citing authorities showing that contract law generally holds waiver effective without proof of detrimental reliance).

**82.** *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex.1967).

**83.** *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

**84.** *In re Citigroup, Inc.*, 376 F.3d 23, 26 (1st Cir.2004) ("We have emphasized that, to succeed on a claim of waiver, plaintiffs must show prejudice."); *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir.2002); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir.1992) ("[P]rej-udice is the touchstone for determining whether the right to arbitrate has been waived. . . ."); *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 206 (4th Cir.2004) ("[T]he dispositive question is whether the party objecting to arbitration has suffered actual prejudice.") (internal quotations and italics omitted); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir.2004) ("In addition to the invocation of the judicial process, there must be prejudice to the party opposing arbitration before we will find that the right to arbitrate has been waived."); *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003); *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir.2003) ("The actions must result in prejudice to the other party for waiver to have occurred."); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir.2005); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1490 (10th Cir.1994); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 (11th Cir.2002) ("[W]e look to see whether, by [invoking the litigation process], that party has in some way prejudiced the other party.") (internal quotations omitted).

**85.** *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 590–91 (7th Cir.1992); *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 777 (D.C.Cir.1987) (holding "a court may consider prejudice to the objecting party as a relevant factor among the circumstances that the court examines in deciding whether the moving party has taken action inconsistent with the agreement to arbitrate").

**86.** *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130–31 (Tex.2005); *In re Kellogg Brown &*

■ Under Texas law, waiver may not include a prejudice requirement, but estoppel does. In cases of waiver by litigation conduct, the precise question is not so much when waiver occurs as when a party can no longer take it back. As noted above, Texas estoppel law does not allow a party to withdraw a representation once the other party takes "action or forbearance of a definite and substantial character." [87] Using precisely the same terms, the Restatement does not allow a party to withdraw an option contract when the offeree has taken substantial action based upon it.[88] In these contexts, prejudice is an element of the normal contract rules.

■ Thus, we agree with the courts below that waiver of arbitration requires a showing of prejudice.

## VI. Was Arbitration Waived Here?

### A. Did the Culls Waive Arbitration?

It remains only to apply these rules to this case.

■ Unquestionably, the Culls substantially invoked the litigation process, as their conduct here far exceeds anything we have reviewed before. Before arbitration was ordered, the Culls did not deny taking ten depositions, and the court's file (of which the trial judge took judicial notice) included:

- their initial objection to arbitration covering 79 pages;
- the Defendants' responses to requests for disclosure;
- the Culls' five motions to compel, attached to which were 76 requests for production of documents regarding complaints, inspections, repairs, and settlements relating to eight other homes in the same subdivision;
- Perry Homes' two motions for protective orders regarding six designees noticed for deposition by the Culls on nine issues (including purchase and preparation of the lot, design and construction of the foundation, sale of this home and others in the subdivision, and attempts to deal with the Culls' and other foundation complaints), with an attachment requesting 67 categories of documents (including all photos, videos, correspondence, insurance policies, plans, soil tests, permits, subcontractors, contracts for sale, and repairs relating to the house or the suit, all complaints about any house in the subdivision, and Perry Homes' articles of incorporation, by-laws, minutes, and financials); and
- the Culls' notices of depositions for three of the Defendants' experts with 24 categories of documents requested from each (including all documents relating to this case, all their articles,

Root, Inc., 166 S.W.3d 732, 738–39 (Tex. 2005); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 87, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (Thomas, J., concurring) (suggesting Supreme Court sometimes looks to federal law and sometimes law chosen by parties); Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 n. 6 (5th Cir.2004) (noting that whether state or federal law of arbitrability applies "is often an uncertain question").

87. Trammell Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 636 (Tex.1997); see English v. Fischer, 660 S.W.2d 521, 524 (Tex.1983);

Moore Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 936 (Tex.1972); Wheeler v. White, 398 S.W.2d 93, 96 (Tex.1965); RESTATEMENT (SECOND) OF CONTRACTS § 90 (1979).

88. RESTATEMENT (SECOND) OF CONTRACTS § 87(2) (1981) ("An offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice.").

publications, or speeches given in their fields of expertise, all courses or seminars they had attended, all persons they had studied under, and all reference books or treatises in their libraries).

There is simply no question on this record that the Culls conducted extensive discovery about every aspect of the merits.[89]

■ But under the totality-of-the-circumstances test, discovery is not the only measure of waiver. Here, when the warranty defendants initially moved to compel arbitration, the Culls filed a 79-page response opposing it, asserting that the AAA "is incompetent, is biased, and fails to provide fair and appropriate arbitration panels." They complained of the AAA's fees, and asserted that as a result the "purported arbitration clause is unconscionable and unenforceable, and this Court's enforcement of such would be nothing short of ridiculous and absurd." This, plus their prayer asking the trial court to deny the motion to compel arbitration "in its entirety," belies the court of appeals' conclusion that "the Culls merely opposed the use of the AAA" rather than arbitration itself.[90] In some federal courts, the Culls' objection alone could suffice to waive arbitration.[91]

■ The Culls also moved for arbitration very late in the trial process. It is true that Perry Homes moved to continue

the trial setting when the Culls sought arbitration, requesting about ten weeks to finish deposing experts. Because the trial court ordered arbitration, no one knows whether the case would have gone to trial (including the unnamed court clerk cited by the dissent). But in view of the written discovery and depositions already completed, the record is nevertheless clear that most of the discovery in the case had already been completed before the Culls requested arbitration. The rule that one cannot wait until "the eve of trial" to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here.[92]

Then 14 months after filing suit and shortly before the December 2001 trial setting, the Culls changed their minds and requested arbitration. They justified their change of heart on the basis that they wanted to avoid the delays of an appeal. But their change unquestionably delayed adjudication of the merits; instead of a trial beginning in a few days or weeks, the plenary arbitration hearing did not begin until late September of 2002—almost ten months after the Culls abandoned their trial setting. Moreover, to the extent arbitration reduces delay, it does so by severely limiting *both* pretrial discovery *and* post-trial review. Having enjoyed the benefits of extensive discovery for 14

---

**89.** Because we limit our review to the record before the trial judge, we do not consider the Defendants' additional seven volumes of discovery exhibits filed after the arbitration award.

**90.** 173 S.W.3d 565, 570; *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (holding that unconscionable arbitration fee would render clause unenforceable).

**91.** *See In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 (1st Cir.2005) (holding defendant's objections to arbitration before crimi-

nal trial waived his right to arbitration); *Gilmore v. Shearson/American Exp. Inc.*, 811 F.2d 108, 112 (2d Cir.1987) (holding party's withdrawal of its prior motion to compel arbitration constituted express waiver of that right).

**92.** *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex.2006) (citing *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1576–77 (2d Cir.1991), in which arbitration was waived by request that did not come until 18 months after filing and 4 months before trial).

months, the Culls could not decide only then that they were in a hurry.

 It is also unquestionably true that this conduct prejudiced the Defendants. "Prejudice" has many meanings, but in the context of waiver under the FAA it relates to inherent unfairness— that is, a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage:

> [F]or purposes of a waiver of an arbitration agreement[,] prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.[93]

Thus, "a party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party."[94]

Here, the record before the trial court showed that the Culls objected to arbitration initially, and then insisted on it after the Defendants acquiesced in litigation. They got extensive discovery under one set of rules and then sought to arbitrate the case under another. They delayed disposition by switching to arbitration when trial was imminent and arbitration was not. They got the court to order discovery for them and then limited their opponents' rights to appellate review. Such manipulation of litigation for one party's advantage and another's detriment is precisely the kind of inherent unfairness that constitutes prejudice under federal and state law.

### B. A Response to the Dissents

Although we have repeatedly said arbitration agreements can be waived, today's dissents would effectively hold they cannot. That would favor arbitration too much; because most agreements can be waived by the parties' conduct,[95] arbitration contracts should not be *more* enforceable than other contracts. That is not what Congress intended when it enacted the FAA.[96] Indeed, one dissent cannot even bring itself to say the Culls substantially invoked the litigation process. If the litigation conduct here is not enough, it is hard to imagine what would be.

 The dissents make several mistakes in their analyses. First, they misconstrue the standard of review. Every

---

93. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir.2004) (punctuation omitted); *accord, In re Tyco*, 422 F.3d at 46 n. 5 ("[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party."); *In re Citigroup, Inc.*, 376 F.3d 23, 28 (1st Cir.2004); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 327 (5th Cir.1999); *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir.1997); *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 134 (2d Cir.1997) ("[P]rejudice as defined by our cases refers to the inherent unfairness-in terms of delay, expense, or damage to a party's legal position-that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.").

94. *In re Tyco*, 422 F.3d at 46 n. 5.

95. *See, e.g., Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex.1996) (holding companies waived contractual right to approve assignments by treating assignee as full partner); *Ford v. State Farm Mut. Auto. Ins. Co.*, 550 S.W.2d 663, 666 (Tex.1977) (holding insurer waived contractual right to consent to settlement by denying liability under policy).

96. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so.").

abuse-of-discretion review is not identical because "a trial judge's discretion may be applied to scores of situations and in many different ways." [97] Reviewing a declaratory judgment fee award (where trial judges have broad discretion) [98] is not the same as reviewing admission of hearsay (where trial judges follow detailed rules),[99] even though an abuse-of-discretion standard applies to both.[100] Moreover, a totality-of-the-circumstances test presumes a multitude of potential factors and a balancing of evidence on either side; if appellate courts must affirm every time there is some factor that was not negated or some evidence on either side, then no ruling based on the totality-of-the-circumstances could ever be reversed. That standard of review would be the same as no review at all. By applying such a standard, both dissents would allow trial judges to send any case to arbitration no matter what has occurred in court.

■■■■■ Under a proper abuse-of-discretion review, waiver is a question of law for the court,[101] and we do not defer to the trial court on questions of law.[102] We do defer to a trial court's factual findings if they are supported by evidence,[103] but there was no factual dispute here regarding whether the Culls initially opposed arbitration, whether they conducted extensive merits discovery, or whether they sought arbitration late in the litigation process. This leaves only the conclusion whether such conduct constitutes prejudice, a legal question we cannot simply abandon to the trial court.[104]

97. W. Wendell Hall, *Standards of Review in Texas*, 38 St. Mary's L.J. 43, 67 (2006).

98. Tex. Civ. Prac. & Rem.Code § 37.009 ("In any proceeding under this chapter, the court *may* award costs and reasonable and necessary attorney's fees as are equitable and just." (emphasis added)).

99. *See* Tex.R. Evid. 801–806.

100. *See Nat'l Liab. and Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 529 (Tex.2000) (hearsay); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (declaratory fee award).

101. *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex.2002); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex.1999); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703–04 (Tex.1998).

102. *Brainard v. State*, 12 S.W.3d 6, 30 (Tex. 1999) (holding that in abuse-of-discretion standard "we defer to the trial court's factual determinations if they are supported by the evidence and review its legal determinations de novo"); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion

. . . ."); *see* Hall, *supra* note 97, at 284 ("When the trial court's findings involve [mixed] questions of law and fact, the appellate court reviews the trial court's decision for an abuse of discretion. In applying the standard, the reviewing court defers to the trial court's factual determinations if supported by the evidence and reviews its legal determinations de novo."); *cf. Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir.2002) ("This court reviews de novo a district court's dismissal of a claim that a party waived its right to arbitrate."); *accord, Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 (11th Cir.2002); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir.1999).

103. *Brainard*, 12 S.W.3d at 30; *Walker*, 827 S.W.2d at 840; *see* Hall, *supra* note 97, at 284; *cf. Gulf Guar.*, 304 F.3d at 484; *accord, Ivax Corp.*, 286 F.3d at 1316; *Subway Equip.*, 169 F.3d at 326.

104. *See Reliance Nat'l Indem. Co. v. Advance'd Temps., Inc.*, 227 S.W.3d 46, 50 (Tex.2007) ("What might otherwise be a question of fact becomes one of law when the fact is not in dispute or is conclusively established."); Hall, *supra* note 97, at 284 ("[A] trial court abuses its discretion [if the court] . . . fails to properly apply the law to the undisputed facts . . . .").

Second, the dissents define prejudice in a way that makes it impossible to prove. While recognizing that "waiver" has a special definition in the arbitration context, the dissents overlook that "prejudice" does too. Instead of the inherent-unfairness standard used by the federal courts,[105] they impose what appears to be an irretrievable-loss standard. One dissent would go so far as to hold that no amount of discovery, no matter how extensive, can show prejudice if the fees incurred might be compensated in the final arbitration award, *even if erroneously*.[106] No one could ever show prejudice under this standard, because even if a contract allowed no reimbursement of discovery costs (as in this case),[107] it is always hypothetically possible that a rogue arbitrator might reimburse costs regardless. The same dissent would find no prejudice from extensive discovery without proof that an arbitrator would have prohibited it. That again is impossible; arbitrators have almost unbridled discretion regarding discovery, so no one can predict what they might do in advance. Presuming (as the dissents do) that broad discovery is generally available in arbitration simply ignores one of its most distinctive features.[108]

Third, both dissents quibble with the Defendants' proof of prejudice because it was insufficiently detailed.[109] This confuses proof of the *fact* of prejudice with proof of its *extent*; the Defendants had to show substantial invocation that prejudiced them, not precisely how much it all was. Referral to arbitration should be decided summarily with the evidence limited to disputed facts;[110] as the Culls did not dispute that the parties had conducted more than a dozen depositions and other extensive discovery on the merits, requiring proof of each one would have merely made the referral hearing longer and more

105. *See supra* Part VI.A.

106. 258 S.W.3d at 606–07 ("But even if the Court is right and the reimbursement clause does not allow for recovery of all Defendants' litigation attorney's fees, an arbitration award would not be subject to being vacated if an arbitrator interpreted it to allow recovery of all the fees.").

107. The parties contract limited reimbursement to costs incurred in "seeking dismissal" of litigation, not costs incurred in preparing it for trial:

Inasmuch as this Agreement provides for mandatory arbitration of disputes, if any party commences litigation in violation of this Agreement, such party shall reimburse the other parties to the litigation for their costs and expenses including attorney's fees *incurred in seeking dismissal of such litigation.*
(emphasis added).

108. *See Preston v. Ferrer*, —— U.S. ——, 128 S.Ct. 978, 986, 169 L.Ed.2d 917 (2008) ("A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and ex-

peditious results."); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir.1995) (noting that "the discovery provisions of the Federal Rules of Civil Procedure are more generous than those of the American Arbitration Association"); *cf. Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1160 (5th Cir.1986) (finding prejudice due to discovery as "discovery—whether meaningful or otherwise—is not available in arbitration"); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 498 (5th Cir.1986) ("A party to arbitration does not have a right to the pre-trial discovery procedures that are used in a case at law."); *Developments in the Law–Discovery*, 74 HARV. L.REV. 940, 943 (1961) (noting expense of discovery as inconsistent with desire to arbitrate).

109. The court of appeals affirmed on this basis. 173 S.W.3d at 570 ("Appellants did not provide any evidence of the work done, time spent, or costs incurred that would not have been done or incurred in anticipation of an arbitration hearing.").

110. TEX. CIV. PRAC. & REM.CODE § 171.021(b); *see Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992).

expensive. The pre-arbitration record proved that discovery was extensive; the evidence demanded by the dissents would have merely showed how much it cost.

Finally, the dissents' focus on discovery ignores all the other circumstances that the totality-of-the-circumstances test requires us to consider. Because we must consider all the circumstances, the amount of discovery needed to show prejudice will vary depending on what the other circumstances are. As the Fifth Circuit has held, prejudice should be easier to show against a party that initially opposed arbitration than against one who sought it from the start:

> While the mere failure to assert the right to demand arbitration does not alone translate into a waiver of that right, such failure does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred. The failure to demand arbitration affects the burden placed upon the party opposing waiver. When a timely demand for arbitration was made, the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver. A demand for arbitration puts a party on notice that arbitration may be forthcoming, and therefore, affords that party the opportunity to avoid compromising its position with respect to arbitrable and nonarbitrable claims. In contrast,

where a party fails to demand arbitration ... and in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced.[111]

It is these other circumstances that make this case different from *In re Vesta*.[112] The parties seeking arbitration in *Vesta* had not opposed arbitration from the outset and then invoked it after getting all the discovery they wanted.[113] Nor was the *Vesta* case close to trial, as was the case here. The parties in *Vesta* had taken four depositions (rather than 15); they had also exchanged standard requests for disclosure and one request for production, but only one of those documents was in the record so there was no evidence whether this limited discovery related to the merits (as the extensive discovery here clearly did).[114] And while the party opposing arbitration in *Vesta* allegedly incurred more than $200,000 in expenses, most of that was incurred in *getting* discovery rather than *providing* it;[115] a party who *requests* lots of discovery is not prejudiced by getting it and taking it to arbitration in the same way that a party who *produces* lots of discovery outside the stricter discovery limits in arbitration.[116]

Applying the proper standard of review and the proper definition of prejudice, we disagree with the dissents that the Defendants have failed to show prejudice here.

---

**111.** *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir.2004) (internal citations and punctuation omitted).

**112.** *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759 (Tex.2006).

**113.** Two of the numerous defendants in *Vesta* initially objected to the remaining defendants' motion to compel arbitration, but withdrew

that objection before the hearing on the motion.

**114.** *Id.* at 763.

**115.** *Id.*

**116.** The defendants in *Vesta* had stipulated that all discovery obtained so far could be used in arbitration.

## C. Did the Warranty Companies Waive Arbitration?

■ Finally, the Culls argue the warranty companies cannot object to arbitration for two reasons.

First, the warranty companies originally requested arbitration (which the Culls opposed), so it could be argued that it is unfair to hold the Culls to their original position without holding the warranty companies to theirs. Of course, we cannot hold both parties to their original positions as those positions were contradictory. More important, while the parties' original demands are relevant factors, the test is the totality of the circumstances. Looking to all the circumstances, it is quite clear from the parties' extensive co-participation in months of discovery that everyone waived their right to arbitration—whether they asserted that right early (as did the warranty companies) or late (as did the Culls).

■ Second, the Culls argue that the only objection to the trial court's order compelling arbitration was filed by Perry Homes, not the warranty companies. It is true that only Perry Homes' attorneys signed the motion, but in that motion and at the hearing held on it they represented that they were authorized to do so on behalf of all the Defendants. If the Culls wanted to question their authority to speak for the warranty companies, they should have done so by sworn motion.[117]

\* \* \*

Accordingly, we reverse the court of appeals' judgment, vacate the arbitration award, and remand this case to the trial court for a prompt trial.

Justice O'NEILL filed a concurring opinion.

---

117. See TEX. R. CIV. P. 12.

Justice JOHNSON filed an opinion concurring in part and dissenting in part, in which Chief Justice JEFFERSON and Justice GREEN joined.

Justice WILLETT filed an opinion concurring in part and dissenting in part.

Justice O'NEILL, concurring.

Most members of the Court agree that the Culls substantially invoked the litigation process before requesting arbitration; the point of disagreement is whether Perry Homes adequately proved it suffered prejudice as a result. I join the Court's opinion, but write separately to note that I believe the proof required to demonstrate prejudice in any given case should be measured by the degree to which the litigation process has been invoked. In some circumstances, a party's invocation of the judicial process may be so substantial that a court could presume the party resisting arbitration has been prejudiced and the right to arbitration has been waived. In my view, such a presumption may easily be drawn on this record.

Justice JOHNSON, joined by Chief Justice JEFFERSON and Justice GREEN, concurring in part and dissenting in part.

I disagree that the trial court abused its discretion in compelling arbitration. I concur with the disposition of part VI–C. I dissent from parts VI–A and VI–B of the Court's opinion and dissent from its judgment.

The parties agree that their arbitration agreement covers the dispute and that the Federal Arbitration Act (FAA) applies. Thus, whether the Culls waived the right to arbitrate is a question of law. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d

571, 574 (Tex.1999); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703–04 (Tex.1998). The Court has said previously, and says again today, that prejudice is a required element of waiver of the right to arbitrate cases subject to the FAA. 258 S.W.3d at 595; *see In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex.2007). The party asserting waiver has the burden to prove prejudice. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex.2001) (noting that if an agreement to arbitrate exists and the party opposing arbitration fails to prove its defenses, then a trial court has no discretion and its only option is to compel arbitration); *In re Bruce Terminix Co.*, 988 S.W.2d at 704 ("Even substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party proves that it suffered prejudice as a result."). In the context of the issue before us, prejudice means detriment. *See In re Bank One*, 216 S.W.3d at 827 ("A party waives an arbitration clause when it substantially invokes the judicial process to the other party's detriment."). We review a trial court's order compelling arbitration for an abuse of discretion. *See In re Bruce Terminix Co.*, 988 S.W.2d at 705. That standard is in accord with the general practice of reviewing a trial court's actions for an abuse of discretion when a trial court has discretion to grant or deny relief based on its factual determinations. *See Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex.1998) (noting that the abuse of discretion standard of review as to a trial court's factual determinations applies when a trial court has discretion either to grant or deny relief based on its factual determinations). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the trial court's ruling was proper, but whether the trial court acted without reference to guiding rules and principles. *See Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex.2004). The

trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id.* at 839. Generally, if there is any evidence to support the trial court's ruling then the court did not abuse its discretion. *See In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 848 (Tex.2008) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002)). That is because it is only when the evidence is such that the trial court could have made but one decision, yet made another, that we say the trial court abused its discretion. *Id.* Our decisions affording deference to trial court rulings when evidence supports those rulings comport with the standard of review utilized by the United States Fifth Circuit Court of Appeals in regard to whether a party has suffered prejudice for purposes of waiving arbitration rights subject to the FAA. The Fifth Circuit's position is that trial court findings on which the legal conclusion of waiver is based are predicate questions of fact "which may not be overturned unless clearly erroneous." *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir.1986); *see also Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341, 347 (5th Cir.2004) ("[T]he district court's finding that PRLLC would suffer prejudice if arbitration was compelled is not clearly erroneous.").

The waiver issue in this matter is not determined by general waiver elements, but by waiver as that term is used in regard to avoiding arbitration agreements subject to the FAA. Generally, "waiver" is the intentional relinquishment of a right actually or constructively known, or intentional conduct inconsistent with claiming that right. *See Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex.2003). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual or constructive knowl-

edge of its existence; and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex.1996). The Culls' actions and their attorneys' statements in court, taken as a whole, present compelling evidence of those elements.

Waiver as that term is used in regard to arbitration agreements subject to the FAA, however, requires more than is required for general waiver—it requires proof that the party asserting waiver as a defense to arbitration has suffered detriment. 258 S.W.3d at 589–90; *In re Bank One*, 216 S.W.3d at 827. So, when the Culls finally moved to compel arbitration and proved applicability of an arbitration agreement, Defendants unquestionably had the burden to raise and prove their defense of waiver, including prejudice, if they wanted to avoid arbitration. *In re Bruce Terminix Co.*, 988 S.W.2d at 704.

Defendants recognized that to avoid arbitration they had to prove a defense to the arbitration agreement. As part of their response to the Culls' motion to compel arbitration, Defendants pled that (1) after suit was filed, all parties conducted written and oral discovery, (2) the Culls filed several motions and obtained two hearings and court rulings on discovery-related issues, and (3) a trial setting was imminent. Defendants conceded applicability of the arbitration clause, then cited authorities for and took the position that "Plaintiffs have waived arbitration because they substantially invoked the judicial process to the detriment of Defendants." Subsequently, Defendants more clearly detailed the detriment they were claiming:

In this case, the *costs incurred by Defendants in responding to the motions to compel* filed by Plaintiffs would not have been incurred during the course of arbitration. Similarly, defendants are prejudiced by the fact that it [sic] was required to comply with the Court's orders on such motions to compel, *when such means and methods would not have been available in arbitration*. Because of Plaintiffs' delay in seeking arbitration, coupled with the resulting *prejudice by Defendants being required to respond to multiple discovery motions and comply with orders thereon*, Plaintiffs cannot now rely on the Limited Warranty Agreement to compel arbitration.

(Emphasis added). A second part of Defendants' response was a motion for continuance of trial to complete discovery.

At the hearing on the Culls' motion to compel arbitration, the trial judge, who noted at the end of the hearing that "I just finished [an arbitration] with the American Arbitration Association," admitted all the evidence offered, and took judicial notice of the court file as requested by Defendants. After evidence was introduced at the hearing, Defendants again argued that there were two factors involved: "whether or not the parties have acted inconsistently with the agreement to arbitrate and then whether those actions and the actions that were taken actually worked to the detriment or prejudice of the party that's opposing transference to arbitration."

During the hearing, the trial judge expressed considerable concern over the Culls' conduct. He discussed the Culls' testimony that they had knowledge of the arbitration clause before suit was filed, the extended time for which the case had been filed, and the impending trial setting. He also discussed the arbitration provision itself,[1] its mandatory nature, and pressed

1. In relevant part, the provision provided for the homeowners, the builder, the administrator of the warranty program, and the warranty insurer to submit to arbitration

the Culls' attorney about the reason for the delay in requesting arbitration. Finally, he asked about a provision in the arbitration provision that provided "if any party commences litigation in violation of this Agreement, such party shall reimburse the other parties to the litigation for their costs and expenses including attorney's fees incurred in seeking dismissal of such litigation." The Culls' attorney acknowledged the provision and asserted that it would be up to the arbitrator to determine whether the Culls would be responsible for such fees and costs of Defendants. Defendants did not dispute the Culls' position. Then, agreeing with the assertions of the parties, the trial judge did not address whether the judicial process had been substantially invoked; rather, the court concluded Defendants had not shown the prejudice they claimed and granted the Culls' motion:

> The question is, I think, when it deals with waiver is *are the defendants prejudiced by this delay, and if they are not prejudiced or if there is not proof of prejudice, then the Court has no alternative but to order the case abated for arbitration purposes.*
>
> And, [counsel for Defendants], *all* I have heard from you insofar as what is the prejudice suffered by people you represent is that *they have participated in litigation activities that may or may not have been required by the arbitrator.*

all claims, demands, disputes, controversies, and differences that may arise between the parties to this Agreement of whatever kind or nature, including without limitation, disputes: (1) as to events, representations, or omissions which pre-date this Agreement; (2) arising out of this Agreement or other action performed or to be performed by the Builder, the Administrator or the Insurer pursuant to this Agreement.

As to procedures in arbitration, the arbitration provision provided that "The Arbitration

> So without anything further, I'm going to grant the motion to abate the case for arbitration.[2]

(Emphasis added).

Perry Homes filed a motion for reconsideration. In their motion, Perry Homes again asserted that "all parties have conducted written and oral discovery under the Texas Rules of Civil Procedure" but did not complain that they had been denied any discovery. Perry Homes' motion recapped the prejudice they were claiming:

> Defendants have in fact been prejudiced by Plaintiffs' last-minute attempt to disclaim their election to file suit and instead choose arbitration. In this case, *the costs incurred by Defendants*—including attorneys' fees and man hours— in attending 16 depositions, responding to multiple sets of written discovery and responding to the motions to compel filed by Plaintiffs *would not have been incurred during the course of arbitration. Similarly, Defendants are prejudiced by the fact that they were required to comply with the Court's orders on such motions to compel, when such means and methods would not have been available in arbitration.* The amount of attorney time Perry Homes has invested in responding to Plaintiffs' discovery requests and related motions thus far is 122 attorney hours and 20 paralegal hours.

shall be conducted in accordance with the Arbitrator's rules and regulations to the extent that they are not in conflict with the Federal Arbitration Act."

**2.** The trial court did not order arbitration as to defendants Jerald W. Kunkel, the foundation engineer, and his firm. The Culls agreed the Kunkel defendants were not covered by the arbitration agreement. The Kunkel defendants are not parties to this appeal.

(Emphasis added). An affidavit was attached setting out that the law firm representing Perry Homes had spent 122 attorney hours and 20 paralegal hours in responding to the Culls' discovery requests and related motions.[3] The hours were not broken down and no dates, times, or tasks were set out. There was no specification as to time spent on actions Defendants claimed as prejudice—responding to motions to compel discovery and complying with court orders compelling discovery that would not have been available in arbitration. The docket sheet reflects that the trial court denied the motion, but the record contains neither a transcript from the hearing nor an order ruling on the motion.

The Court agrees that the standard of review applicable to the trial court's order compelling arbitration is abuse of discretion, but its holding that the Culls waived their right to arbitrate misses the mark. In reaching its conclusion, the Court says the question of prejudice is a matter of law because all the relevant facts were undisputed. It seems to me that (1) there was evidence requiring the trial court to make evidentiary determinations as to prejudice, and (2) Defendants did not prove that they were prejudiced or that the Culls obtained an advantage because of the litigation process.

As to the evidence that the trial court was required to weigh and make evidentiary determinations on, the record reveals that Defendants took depositions and engaged in written discovery, as did the Culls. Yet Defendants did not claim prejudice due to the Culls somehow reaping an unfair advantage through discovery. The trial court could have considered the advantages accruing to all parties by depositions and bilateral written discovery and determined that no prejudice was shown because all parties were more fully prepared to proceed with dispute resolution by knowing what the testimony of witnesses would be, and that such knowledge would shorten arbitration and reduce further costs.

Next, at the time of the hearing on the motion to compel there was an imminent trial setting. But Defendants did not claim they had spent time preparing to go to trial at the December 10 setting and that those hours would be wasted unless they went to trial immediately. At the December 6 hearing on the motion to compel, the parties agreed the case would not be ready for trial at the December 10 setting, and the Culls' attorney stated that, according to the court clerk, the case probably would not be reached for trial. In any event, a trial setting and actually going to trial are different matters. Even though Defendants moved for a continuance and requested the case to be reset in two months, there is nothing in the record to show when the next setting actually would have been, much less when the case would have gone to trial if the motion for continuance had been granted. The Court speculates that trial would have occurred sooner than arbitration took place. To the extent a resetting or actual future trial date should be considered, however, the trial court was in the best position to determine when any new setting would have occurred—whether days, weeks, or months in the future—and to determine the weight to give the setting and a potential trial date along with the other factors.

---

**3.** Defendants referenced depositions in their motion for rehearing. They did not take the position or offer proof at the hearing on the Culls' motion to compel arbitration that depositions would not have occurred in arbitration either by permission of the arbitrator or by agreement.

Further, the Court discounts evidence of a contractual provision in the arbitration clause requiring any party that commenced litigation in violation of the arbitration clause to reimburse other parties' litigation expenses and costs. The clause is not a model of clarity as to exactly what was recoverable:

> Inasmuch as this Agreement provides for mandatory arbitration of disputes, if any party commences litigation in violation of this Agreement, such party shall reimburse the other parties to the litigation for their costs and expenses including attorney's fees incurred in seeking dismissal of such litigation.

It was the trial court's goal, just as it is ours, to ascertain the true intent of the parties to the agreement. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). The language used in the agreement is the primary evidence of that intent. *See id.; National Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). If the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. *See J.M. Davidson*, 128 S.W.3d at 229.

The Court construes the clause as allowing reimbursement for expenses and attorneys' fees incurred in seeking dismissal of

the lawsuit, but not for expenses and fees in preparing the suit for trial. However, the clause can also be read as requiring reimbursement of *all* litigation costs and expenses, including but not limited to attorneys' fees incurred in seeking dismissal of the litigation. And that, apparently, is how the parties interpreted the agreement. The trial court questioned the Culls' attorney about whether the Culls would be responsible for the Defendants' attorneys' fees and costs. When the Culls' attorney replied that it was an issue for the arbitrator, the Defendants' attorney did not contend otherwise. *See Mathis v. Lockwood*, 166 S.W.3d 743, 744–45 (Tex.2005); *Banda v. Garcia*, 955 S.W.2d 270 (Tex.1997). The Culls' attorney's representations and lack of protestation by Defendants' attorney is the only evidence in the hearing record about the parties' intent as to the language in the clause.[4] Under the abuse of discretion standard by which we review the trial court's order, the reimbursement clause and the attorneys' respective representations and silence is part of the entire record which we must consider in determining whether the trial court followed guiding rules and principles. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex.1992); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992).

But even if the Court is right and the reimbursement clause does not allow for

---

**4.** Although not before the trial court when it ordered arbitration, the arbitration record now before us shows that Defendants considered the clause to provide for recovery of *all* litigation costs and attorneys' fees, not just those incurred in seeking dismissal of the lawsuit. The arbitration record shows Defendants claimed that pursuant to the reimbursement clause they were "entitled to recover or setoff [their] attorney's fees from [the Culls], which were incurred in connection, with the litigation." Perry Homes' attorney submitted an affidavit to the arbitrator in support of the claim for attorneys' fees recovery or setoff.

The affidavit mirrored the affidavit submitted as part of Defendants' motion for reconsideration that was earlier filed in the lawsuit. The arbitration affidavit claimed that

> Prior to the Court's order compelling arbitration, Perry Homes incurred one-hundred-twenty-two (122) attorney hours and twenty (20) paralegal hours responding to Claimants' discovery requests and discovery-related motions. Accordingly, Perry Homes is entitled to an offset in the amount of $26,400.00 against any damages awarded to Claimants, due to their violation of the arbitration agreement.

recovery of all Defendants' litigation attorney's fees, an arbitration award would not be subject to being vacated if an arbitrator interpreted the clause to allow recovery of all the fees. If arbitrators simply misinterpret a contractual clause such as the reimbursement clause, that type of error is not one which will justify setting aside an award.[5] *See Wise v. Wachovia Securities, LLC,* 450 F.3d 265, 269 (7th Cir.2006) (noting that in reviewing an arbitration award under the FAA, "the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all"). Under the circumstances, it was proper for the trial court to weigh, and the record shows it did, the reimbursement provision and the parties' representations in deciding that Defendants had not proved they suffered prejudice. Regardless of the trial court's interpretation of what costs and expenses would be recoverable under the reimbursement provision, the mere existence of the provision and its reimbursement requirement comprise evidence supporting the decision to order arbitration and properly leave construction and application of the clause to the arbitrator.

In sum, there were decisions for the trial court to make based upon weighing evidence, drawing inferences from it in light of the parties' contentions, determining what the evidence and inferences proved, and drawing a conclusion as to Defendants' claims of prejudice. That sit-uation requires our deferring to the trial court's findings and order when the standard of review is abuse of discretion.

Despite evidentiary matters the trial court had before it which warrant our deferring to its implied and stated findings, the Court sets out factors that were uncontroverted, then concludes, without ever saying exactly how, that Plaintiffs were advantaged or Defendants were prejudiced by the "inherent unfairness" of it all:

> Here, the record before the trial court showed that the Culls objected to arbitration initially, and then insisted on it after the Defendants acquiesced in litigation. They got extensive discovery under one set of rules and then sought to arbitrate the case under another. They delayed disposition by switching to arbitration when trial was imminent and arbitration was not. They got the court to order discovery for them and then limited their opponents' rights to appellate review. Such manipulation of litigation for one party's advantage and another's detriment is precisely the kind of inherent unfairness that constitutes prejudice under federal and state law.

258 S.W.3d at 597. No one (but the Culls and their attorneys) could seriously disagree that the Culls' conduct smacks of inequity. But even disregarding the evidentiary questions the trial court had to resolve as set out above, when the record is searched for evidence that Defendants suffered prejudice *as Defendants*

---

**5.** The Federal Arbitration Act provides that an arbitration award may be set aside for limited reasons:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

*claimed*—by incurring expenses in discovery proceedings, responding to discovery motions, and complying with court orders on discovery when that type of activity would not be available in arbitration— there is none. Nor is there evidence that the Culls were unfairly advantaged. The fact of the matter is that all parties took part in litigation discovery as part of the process to resolve their dispute. The Court discusses at length how the facts are undisputed, how ordering the parties to arbitration resulted in "inherent unfairness" to Defendants, and that such "inherent unfairness" equates to prejudice to Defendants, or conversely, unfair advantage to the Culls. However, the authorities used to support the Court's statements do not cut nearly so broadly as the Court indicates. The cases cited incorporate elements such as delay, expense, damage to a party's legal position, or "tactical advantage" by which to measure prejudice to one party or unfairness to the other party. 258 S.W.3d at 597 n. 94 (citing *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 n. 5 (1st Cir.2005) ("[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an *unfair tactical advantage* over the opposing party." (emphasis added))); *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 134 (2d Cir.1997) ("[P]rejudice as defined by our cases refers to the inherent unfairness—*in terms of delay, expense, or damage to a party's legal position*—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." (emphasis added)).

The following passage embodies the substance of the Court's opinion as to prejudice or unfair advantage:

It is also unquestionably true that [the Cull's] conduct prejudiced the Defendants. "Prejudice" has many meanings, but in the context of waiver under the FAA it relates to inherent unfairness— that is, a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage:

[F]or purposes of a waiver of an arbitration agreement[,] prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.

Thus, "a party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party."

... Such manipulation of litigation for one party's advantage and another's detriment is precisely the kind of inherent unfairness that constitutes prejudice under federal and state law.

258 S.W.3d at 597 (citations omitted). As noted previously, the Court does not specify how Defendants proved, at the hearing on the Culls' motion to compel arbitration, detriment from delay, damage to Defendants' legal position or a tactical advantage achieved by the Culls, which perhaps is just as well because Defendants did not claim those types of prejudice in the trial court. Defendants claimed prejudice because of discovery and court hearings that would not have occurred in arbitration. But contrary to the Court's conclusion that discovery would have been limited in arbitration, the broad arbitration clause did not preclude any particular type or level of discovery. It provided that arbitration would be conducted according to the arbitrator's rules so long as they did not conflict with the FAA. Specifically, and by way of example, Defendants did not claim prejudice from or prove that (1) delay because of litigation interfered with

their business activities, caused them loss of evidence, or interfered with their ability to arbitrate; (2) if an arbitrator had ordered the lawsuit discovery pursuant to the arbitration clause, the order would have violated the arbitration clause; (3) had the litigation discovery been requested in arbitration, Defendants would have agreed to it and conferences with the arbitrator would not have been necessary; (4) the litigation discovery was not useable in arbitration; (5) Defendants had already begun trial preparations or taken other litigation related actions that would have been wasted effort if the case went to arbitration; or (6) Defendants suffered compromise of their legal position on the merits of the Culls' claims.

There was not an offer of proof such as by expert testimony, Defendants themselves, their attorneys or otherwise, that all, some, or any arbitrators probably would not have allowed the discovery, that their agreement or a rule limited discovery in arbitration, or Defendants wasted any litigation discovery effort. And to boot, arbitrators do not come free. Disclosure conferences in arbitration might well have cost more than discovery hearings in litigation because arbitrators generally charge for preparing for and attending conferences while trial judges do not. Nor have Defendants claimed that their attorneys would not have charged fees for arbitration discovery activities. So the possibility exists that the disclosure process in arbitration could have ended up costing more than litigation discovery.

The Court questions whether broad discovery is generally available in arbitration, but the parties here do not argue that it is. What *is* argued here is that the parties' contract provided how the arbitration was to be conducted—through adherence to the arbitrator's rules so long as those rules do not conflict with the FAA—and that

Defendants did not prove any litigation discovery that would have been in violation of the contract. The Court says that as of the time of the hearing on the Culls' motion to compel arbitration, what discovery an arbitrator would allow was purely speculative. But arbitration is not new; Defendants could have at least attempted to prove the custom and practice, if any, of arbitrators as to discovery in arbitration, even though each arbitration is governed by the particular agreement between the parties. Even if such evidence might have been ruled speculative, as the Court concludes it would have been, the obligation to overcome the burden of proof still lay with Defendants. *See Borg-Warner Corp. v. Flores,* 232 S.W.3d 765, 772–74 (Tex.2007) (recognizing difficulties of proving asbestos claims against individual defendants, yet requiring plaintiffs to meet that burden).

The Court says that "a party who enjoys substantial direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils." 258 S.W.3d at 593. I agree with that statement. The problem is that the Court does not apply the statement in its entirety to this case. The Court assumes, without requiring Defendants to prove, that the Culls obtained some advantage or caused detriment to Defendants by both parties having engaged in discovery activities. It is hard to see how discovery of facts, witness names, documents, and testimony about the controversy can prejudice either party. *See Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984) (noting that discovery is done so disputes may be decided by what the facts are, not by what facts are concealed). Defendants neither alleged nor proved that they were prejudiced because some privileged, proprietary, or confidential matter had been disclosed. Discovery in both judicial proceedings and in arbitration facilitates just

and reasonable resolutions of disputes and helps prevent unjust and unreasonable resolutions because of ambush, surprise, or concealment of relevant, nonprotected, nonprivileged evidence which could sway the outcome. Furthermore, I disagree with the idea that merely making discovery disclosures is evidence of wasted effort or other prejudice. Although the extent to which a party engages in litigation discovery plays a significant part in determining whether that party substantially engaged the litigation process, disclosure of relevant, nonprivileged evidence, names of witnesses, and information makes just and reasonable dispute resolution more likely regardless of whether disclosure is strictly voluntary or is made in judicial discovery proceedings or arbitration proceedings.

Evidence at the hearing on the Culls' motion to compel arbitration consisted only of testimony by the Culls and five documents they introduced: the earnest money contract, the application for warranty, the limited warranty agreement containing the arbitration provision, a letter from the warranty company, and a copy of one of Defendants' original answers. The Culls acknowledged in their testimony that discovery and depositions had occurred, but they were unsure of how many depositions and how much discovery. Defendants requested the trial court to take judicial notice of "five separate motions to compel discovery and two separate orders on some, but not all, of the motions to compel." The court took notice of "its file," which at that time mostly consisted of copies of pleadings and discovery requests attached as exhibits to motions. The file contained only one or two of the documents actually produced in discovery. There were two orders on the Culls' motions to compel discovery. The second order referred only to the Kunkel defendants who were not ordered to arbitration.

Because the Kunkel defendants were not ordered to arbitration, the trial court could have determined that any orders or motions relating solely to them should not be considered in regard to prejudice as to the other Defendants. In short, the record on which the trial court ruled on December 6 was not extensive, and although it showed what the Culls *requested*, practically none of the record was of what Defendants *produced* in discovery, which was filed later when Defendants sought to set aside the arbitration award. And Defendants did not allege in the trial court that some or even any of the discovery would not be *useful* in arbitration, only that the discovery would not be *available* in arbitration.

Last, the Court says that requiring Defendants to file detailed proof of the discovery would have made the record more cumbersome and would have entailed more expense, and that to show prejudice, Defendants only had to show substantial wasted effort anyway. The Court then concludes that the record before the trial court at the time of the hearing showed substantial wasted effort, and thus detriment, to Defendants. But in *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759 (Tex. 2006), the Court declined to determine that waiver of the right to arbitrate occurred when the party opposing arbitration failed to introduce any of the discovery documents, present details about them, or contend that the discovery would not be useful in arbitration. The record, the Court stated,

> does not show whether these requests were limited or extensive, whether they sought information for affirmative claims or defensive ones, or even whether they addressed the merits or merely the arbitration issue. Further, [plaintiff] does not allege that the discovery already conducted would not be useful in arbitration; to the contrary, he concedes

it would be useful whether the case is arbitrated or tried.

*Id.* at 763.

Neither party here claimed before arbitration (nor, for that matter, after arbitration) that the litigation discovery would not be useful in arbitration. On the other hand, and as addressed below, Defendants claimed after arbitration that they suffered prejudice because Plaintiffs' attorney used the discovery depositions to prepare for arbitration. In this regard, there are further inferences from the record that the Court does not credit but that the trial court could have made when it compelled arbitration: both parties would use the litigation discovery and depositions to prepare for arbitration, the discovery would be useful in arbitration, and neither party was unfairly advantaged or suffered detriment from the discovery.

In summary, the Court (1) does not limit its review to Defendants' claims of prejudice made in the trial court, (2) disregards factors that presented the trial court with decisions to make based on evidence allowing for different interpretations and inferences, and (3) assumes "inherent unfairness" equates to Defendants' prejudice or the Culls' unfair advantage from litigation conduct and effectively forgives Defendants' failure to prove detriment to themselves or advantage to the Culls.

Defendants make other contentions not reached by the Court, but none of them warrant holding that the trial court abused its discretion. In their brief to this Court, Defendants reference rules of the American Arbitration Association and urge that the AAA Rules of Procedure provide for limited discovery in that the arbitrator is limited to directing "(i) the production of documents and other information, and (ii) the identification of any witnesses to be called." Defendants also assert that they were prejudiced because during post-arbitration proceedings, the Culls' attorney testified that he reviewed deposition testimony in preparing for the arbitration and depositions are not generally available in arbitration.[6] First, Defendants did not introduce the AAA rules into evidence at the hearing or ask the trial court to take judicial notice of them. Second, to the extent the arguments encompass discovery depositions, Defendants did not complain in the trial court that they were prejudiced by the taking of depositions or that the Culls planned to use them in arbitration, and the argument cannot be raised here. *See* TEX.R.APP. P. 33.1; *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 577 (Tex.2006) (noting that except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties). Third, even if the AAA rules had been before the trial court, there was no evidence that all, most, or any arbitrators would have refused to require disclosure of any of the matters disclosed by Defendants. Finally, Defendants' attorneys had access to the same deposition testimony to use for arbitration preparation, so there could not have been an unfair advantage to the Culls by use of the depositions.

I conclude the record is not conclusive either that Defendants suffered prejudice as they claimed or that the Culls obtained an unfair advantage by litigation conduct as the Court holds. I also conclude that evidence before the trial court required the court to weigh and draw inferences from it and that some evidence supports the trial court's determination that Defendants did not prove prejudice to them-

---

**6.** Of course, that argument cuts against the idea that discovery was not usable in arbitration.

selves or unfair advantage to the Culls by use of the litigation process. Accordingly, I would hold that the trial court did not abuse its discretion by compelling the parties to arbitrate and I would affirm the judgment of the court of appeals.

Justice WILLETT, concurring in part and dissenting in part.

Arbitration has become a hot-button topic for the Court of late—in this Term alone we have decided at least three arbitration-related cases [1] and heard argument in four more.[2] As the range of opinions in this case demonstrates, the invocation and operation of arbitration provisions can present tricky legal questions that spark honest differences of opinion. I agree with Parts I–V of the Court's decision, and also with much of Part VI regarding waiver. However, I respectfully dissent from the Court's ultimate result, not on an arbitration law issue, but on a much more old-fashioned ground—the applicable standard of review.

The Court properly acknowledges that a trial court's order compelling arbitration is reviewed for abuse of discretion. Under this standard, we will reverse the trial court only when "it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles." [3] I agree with the Court, and the trial judge for that matter, that the record clearly shows that the Culls substantially invoked the judicial process. I also agree with the Court that

the cost-reimbursement provision in the arbitration agreement does not prevent Perry Homes from showing prejudice resulting from the Culls' arbitration flip-flop. JUSTICE JOHNSON is comforted by the possibility that an arbitrator might (mis)construe this provision to award Perry Homes *all* its litigation-related costs and fees, but I am not. The provision limits reimbursement to "costs and expenses including attorney's fees incurred *in seeking dismissal of such litigation*," and we cannot plausibly say Perry Homes fails on prejudice because an arbitrator may misread the agreement.

Having said all that, I cannot conclude, as does the Court, that the trial court abused its discretion by compelling arbitration. I believe in waiver-by-conduct, but Perry Homes bore the threshold responsibility of building a record upon which the trial court could find prejudice. The record on appeal is far more extensive than what the trial court considered (and the arguments far more refined), but I agree with JUSTICE JOHNSON that the trial court—sitting where it sat, seeing what it saw, hearing what it heard, reviewing what it reviewed—did not abuse its discretion in concluding "no prejudice." Trial courts do not have carte blanche "to send any case to arbitration no matter what has occurred in court," [4] but I cannot conclude that this trial court acted "without reference to any

**1.** *See Chambers v. O'Quinn*, 242 S.W.3d 30 (Tex.2007); *In re U.S. Home Corp.*, 236 S.W.3d 761 (Tex.2007). This case is the third.

**2.** *In re Great Western Drilling, Ltd.*, 211 S.W.3d 828 (Tex.App.–Eastland 2006), *pet. granted*, 51 Tex. Sup.Ct. J. 77 (Nov. 2, 2007); *Werline v. E. Tex. Salt Water Disposal Co.*, 209 S.W.3d 888 (Tex.App.–Texarkana 2006), *pet. granted*, 51 Tex. Sup.Ct. J. 77 (Nov. 2, 2007); *Bison Bldg. Materials v. Aldridge*, 2006 WL 2641280 (Tex.App.–Houston [1st Dist.] 2006), *pet. granted*, 51 Tex. Sup.Ct. J. 77 (Nov. 2, 2007); *Forest Oil Corp. v. McAllen*, 2005 WL 3435061 (Tex.App.–Corpus Christi 2005), *pet. granted*, 51 Tex. Sup.Ct. J. 667 (Apr. 27, 2007).

**3.** *In re Nitla*, 92 S.W.3d 419, 422 (Tex.2002) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)).

**4.** 258 S.W.3d at 598.

guiding rules or principles"[5] in ruling that Perry Homes fell short of building a trial-court record that showed prejudice. This is admittedly a close call, and the Court makes the best possible case for going the other way. Given the relevant record, however, I have a difficult time saying the trial court acted arbitrarily or disregarded all guiding standards in not reaching the opposite result. Accordingly, I dissent from the Court's decision vacating the arbitration award and remanding for trial.