**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00098-CV**

_____

**FIDELITY AUTO GROUP, LLC, D/B/A BAYTOWN NISSAN, Appellant**

**V.**

**GRETCHEN HARGRODER, Appellee**

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. A-203,460**

**OPINION**

Gretchen Hargroder ("Hargroder") sued Fidelity Auto Group, LLC, d/b/a Baytown Nissan ("Baytown Nissan") and Nissan North America, Inc. after they sold her a "new" truck that she later learned was used and the previous owner had returned as defective. Baytown Nissan appeals the trial court's order denying its

1

Motion to Compel Arbitration.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (allowing interlocutory appeal from an order denying motion to compel arbitration). In one issue, Baytown Nissan complains the district court erred in denying its Motion to Compel Arbitration, because: 1) the parties have a valid and enforceable arbitration agreement; 2) Hargroder's claims fall within the agreement's broad scope; 3) the question of arbitrability or "waiver" is contractually assigned to the arbitrator not the courts; 4) Baytown Nissan's litigation conduct did not waive its right to arbitrate; and 5) Texas public policy favors arbitration. For the reasons discussed below, we affirm the trial court's Order denying arbitration.

## I. Background and Procedural Posture

In February 2018, Hargroder purchased a "new" 2017 Nissan Titan XD crew cab truck from Baytown Nissan. Baytown Nissan represented the truck was new and sold Hargroder the truck as such. The contract documents for the purchase of the vehicle contained an arbitration provision. The arbitration provision provided as follows:

> **ARBITRATION PROVISION**
> **PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**
> **1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

---

[1]Nissan North America, Inc. also appealed the trial court's Order Denying the Motion to Compel Arbitration. It has since dismissed its appeal; therefore we limit our background and procedural discussion to Baytown Nissan.

**2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
**3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S. C. § 1 et. seq.)

and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of the Arbitration Provision shall be enforceable.

Shortly after buying the vehicle, Hargroder learned that the truck had been previously purchased and returned as defective when it dropped a large amount of engine fluid. When Hargroder learned this, she demanded that Baytown Nissan take the truck back and return her down payment with the vehicle she traded in. Baytown Nissan refused.

In March 2019, Hargroder sued Baytown Nissan, Nissan North America, and two individuals who worked for Baytown Nissan. Hargroder pleaded causes of action for negligence, gross negligence, intentional violations of the Texas Deceptive Trade Practices Act (DTPA), fraud, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, breach of warranties, manufacturing defects, and breach of contract.

4

Baytown Nissan first answered with a general denial, subject to its motion to transfer venue. Its amended answer raised multiple affirmative defenses, sought costs and fees, and demanded a jury. The parties also conducted merits-based written discovery, which included Baytown Nissan responding to Hargroder's multiple requests and propounding written discovery requests on Hargroder. Baytown Nissan also deposed Hargroder and the former employee who sold the truck to Hargroder. In September 2022, the parties filed a Joint Motion for Continuance and Entry of Docket Control Order, which requested that the matter be moved from its October 2022 trial setting and set for trial in June 2023. The trial court signed the parties' Agreed Amended Docket Control Order and set the case on its "try or dismiss" docket in June 2023.

Baytown Nissan moved to compel arbitration in March 2023, almost four years after Hargroder filed suit, shortly after the trial court granted Hargroder's Motion to Compel the production of certain documents, and three months before the scheduled trial setting. In their Motion to Compel Arbitration, Baytown Nissan argued a valid arbitration agreement existed and noted the delegation clause that provides the parties to arbitrate "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision and the arbitrability of the dispute)." Baytown Nissan also argued that the AAA commercial rules say that the arbitrator rather than the court determines issues

5

of arbitrability. Finally, it argued that Hargroder's claims are within the broad scope of the agreement and attached multiple exhibits to its Motion, including the contract documents containing the arbitration provision and the AAA Rules for Commercial Arbitration.

Hargroder filed a Response to Baytown Nissan's Motion to Compel Arbitration and supported her Response with evidence. Hargroder argued that Baytown Nissan waived and relinquished its right to arbitrate via its litigation activities, and that given a recent decision by the Supreme Court of the United States, there is no longer a prejudice requirement. Even so, she argued she expended time and over $3,500 that she would not have had if Baytown Nissan timely demanded arbitration, and she noted the discovery dispute required her to file a Motion to Compel.

Baytown Nissan filed a Reply to Hargroder's Response and disputed that they did not waive the right to enforce the arbitration agreement by their litigation conduct. Baytown Nissan also argued that the Federal Arbitration Act governed the dispute and whether the dispute was arbitrable. It contended that Hargroder had the burden to raise an affirmative defense to the provision's enforcement and that the "question of waiver is one of arbitrability the parties have committed to the arbitrator by adopting the AAA rules." It also asserted that even if the Court rather than the arbitrator had the authority to decide the waiver issue, Hargroder failed to prove that

6

Baytown Nissan had waived its right to enforce the parties' arbitration agreement. Finally, it asserted that it never invoked the litigation process to Hargroder's detriment, and she failed to show she was prejudiced by Baytown Nissan's delay in invoking arbitration.

The trial court denied Baytown Nissan's Motion to Compel Arbitration, and Baytown Nissan timely appealed. After the appeal was perfected but before its submission, Appellee Hargroder requested that a supplemental clerk's record be filed under Texas Rules of Appellate Procedure 34.5(c) and 34.5(b)(4), and on July 13, 2023, the supplemental clerk's record was filed in this Court. The contents of the supplemental clerk's record includes the Appellee's brief filed in the court of appeals with the documents contained in the brief's appendix. These documents were 1) the letter requesting the supplemental clerk's record dated May 2023, 2) an attorney's affidavit dated May 2023 authenticating various documents, 3) Baytown Nissan's discovery responses, and 4) emails between counsel regarding scheduling mediation, discovery disputes, substituting counsel, and the arbitration provision. These documents were filed in the trial court after it ruled on the Motion to Compel Arbitration. Appellant Baytown Nissan objected to the supplemental clerk's record. It argued that the documents in the supplemental clerk's record were all filed as part of Hargroder's appellate brief, after the trial court's March 2023 ruling on the Motion to Compel Arbitration. Baytown Nissan complained that the documents

were not before the trial court when it ruled, so they should not be considered by this Court. We have carried a ruling on that objection with the appeal.

## II. Supplemental Clerk's Record

We first address Appellant Baytown Nissan's objection to the supplemental clerk's record. "If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item." Tex. R. App. P. 34.5(c)(1). If a supplemental clerk's record is filed, it becomes part of the appellate record. *Id.* 34.5(c)(3). Here, the documents contained in the supplemental record were not filed in the trial court until after the appeal was perfected and the parties filed their appellate briefs.

Simply because a supplemental clerk's record is filed, does not mean the documents contained in the supplemental record are relevant for our decision on the merits of the case. *See Roventini v. Ocular Sciences, Inc.*, 111 S.W.3d 719, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (noting same in context of restricted appeal); *see also Republic Services v. Rodriguez*, No. 14-12-01054-CV, 2014 WL 2936172, at *4 (Tex. App.—Houston [14th Dist.] June 26, 2014, no pet.) (declining to consider deposition excerpts that were not before the trial court when it ruled on summary judgment). "The rule has long been that evidence not before the trial court prior to final judgment may not be considered in a writ of error proceeding." *Gen.*

*Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991) (citations omitted) (collecting cases); *Adimora-Nweke v. Yarbrough*, No. 14-19-00426-CV, 2021 WL 1917832, at *3 (Tex. App.—Houston [14th Dist.] May 13, 2021, pet. denied) (citation omitted) (noting that "[w]e do not consider evidence that was not before the trial court at the time it made its ruling in the case."). "'While the record may be supplemented under the appellate rules if something has been omitted, the supplementation rules cannot be used to create new evidence.'" *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 366 (Tex. 2019) (quoting *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004)) (other citation omitted). Since none of the documents in the supplemental clerk's record were before the trial court when it considered the Motion to Compel Arbitration, we do not consider the contents of the supplemental clerk's record filed in this appeal. *See Gen. Elec. Co.,* 811 S.W.2d at 944; *Adimora-Nweke*, 2021 WL 1917832, at *3; *see also Rodriguez*, 2014 WL 2936172, at *4; *Roventini*, 111 S.W.3d at 726.

### III. Motion to Compel Arbitration

We now turn to Baytown Nissan's claim that the trial court erred in denying its Motion to Compel Arbitration.

### A. Standard of Review

"[A] party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the disputed claims fall within the scope

9

of that agreement." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005)). We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *See id.*; *see also Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021) (noting deference to factual determinations if they are supported by evidence). Whether the disputed claims fall within the scope of a valid arbitration agreement is a question of law, which we review de novo. *See Henry*, 551 S.W.3d at 115; *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009). If the trial court finds that a valid arbitration agreement exists, the burden then shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Whether a party waived its right to arbitrate is also a question of law that we review de novo. *Henry*, 551 S.W.3d at 115; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015).

In its order denying Baytown Nissan's Motion to Compel Arbitration, the trial court did not state why it refused to compel Baytown Nissan and Hargroder to arbitrate their dispute. The trial court did not issue findings of fact or conclusions of law, and no party requested them. Because this appeal proceeds without the benefit

10

of the trial court's express findings, the trial court is presumed to have made all findings necessary to support its judgment. *See* Tex. R. Civ. P. 299.

## B. General Arbitration Law Principles

We must first decide whether the parties made a valid and enforceable agreement to arbitrate. *See G.T. Leach*, 458 S.W.3d at 519 (citation omitted). We do so by looking to the parties' intent as expressed in their written agreement. *See id.* "Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (citations omitted); *see also G.T. Leach*, 458 S.W.3d at 519 (stating same). A valid arbitration agreement creates a strong presumption in favor of arbitration. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018) (citing *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013)). Texas and federal law require the enforcement of valid arbitration agreements. *Id.*; *see also* 9 U.S.C. § 2; Tex. Civ. Prac. & Rem. Code Ann. § 171.021. Generally, courts consider an arbitration agreement's terms to determine which issues must be arbitrated. *See RSL Funding*, 569 S.W.3d at 121; *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 & n.37 (Tex. 2008) (stating same and discussing arbitration agreement that assigned "scope determination" to arbitrator rather than court). That said, since parties "have the right to contract as they see fit, they may

11

agree to arbitral delegation clauses that send gateway issues such as arbitrability to the arbitrator." *RSL Funding*, 569 S.W.3d at 121 (citing *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *Forest Oil Corp.*, 268 S.W.3d at 61 n.38).

**C. There is a valid arbitration provision containing a delegation of issues to the arbitrator, but it does not delegate the question of waiver by litigation conduct.**

In support of its sole issue, Baytown Nissan contends that the plain language of the arbitration agreement was evidence that the delegation clause which included determining by arbitration issues including "the scope of the Arbitration Provision" and "arbitrability" rather than by court action. They also contend that they agreed the arbitration would be conducted under the AAA Commercial Rules, which constituted clear and unmistakable evidence that they intended for the arbitrator to determine its own jurisdiction, including waiver by litigation conduct. Hargroder does not dispute the existence of the arbitration agreement or the delegation clause generally but asserts that the issue of waiver by litigation conduct is not included in the arbitrability issues delegated to the arbitrator. In essence, we are asked to determine whether the delegation clause that delegated "arbitrability" and "scope of the agreement" determinations to the arbitrator also encompassed a delegation of whether there has been a waiver by litigation conduct.

Courts generally enforce delegation clauses when the delegation is "clear and unmistakable." *Jetall Companies, Inc. v. Sonder USA Inc.*, No. 01-21-00378-CV, 2022 WL 17684340, at *7 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, no pet.)

12

(mem. op.) (citation omitted); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 588 (Tex. 2008) ("Although the federal courts do not defer to arbitrators when waiver is a question of litigation conduct, they consistently do so when waiver concerns limitations periods . . . ."). "Whether parties have agreed to arbitrate a dispute is a 'gateway matter ordinarily committed to the trial court,' but parties can 'agree to arbitrate arbitrability.'" *Jetall*, 2022 WL 17684340, at *7 (quoting *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018)) (other citation omitted); *see RSL Funding*, 569 S.W.3d at 120 ("[A] contractual agreement to submit the arbitrability question to an arbitrator is valid and must be treated like any other arbitral agreement."). Certain threshold questions of arbitrability may be delegated to the arbitrator if the parties' agreement does so by "'clear and unmistakable evidence.'" *See Jetall*, 2022 WL 17684340, at *7 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 530 (2019)).

Whether a party waived its right to arbitration by its litigation conduct is generally a question for the courts to decide. *See G.T. Leach*, 458 S.W.3d at 520; *Perry Homes*, 258 S.W.3d at 588. This is

> because (1) "[c]ontracting parties would expect the court to decide whether one party's conduct before the court waived the right to arbitrate," (2) it is a "gateway" matter regarding "whether the parties have submitted a particular dispute to arbitration," and (3) "courts decide defenses relating solely to the arbitration clause."

13

*G.T. Leach*, 458 S.W.3d at 520 (quoting *Perry Homes*, 258 S.W.3d at 588–89). There is a recognized distinction between questions of "substantive arbitrability" that courts decide and "procedural arbitrability" which arbitrators decide. *Id.* (citing *BG Group, PLC v. Republic of Arg.*, 572 U.S. 25, 34–36 (2014); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 81 (2002)). In addressing these distinctions, "courts should defer to arbitrators to resolve the issue of waiver when 'waiver concerns limitations periods or waiver of particular claims or defenses,' but [the court[] should decide issues of waiver by litigation conduct." *Id.* at 521 (quoting *Perry Homes*, 258 S.W.3d at 588).

The Supreme Court of Texas has stated that when the issue involves conduct in court, "the court is obviously in a better position to decide whether [the conduct] amounts to waiver[,]" and parties "would expect the court to decide whether one party's conduct before the court waived the right to arbitrate." *See Perry Homes*, 258 S.W.3d at 588 (quoting *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 464 (5th Cir. 2004)); *Jetall*, 2022 WL 17684340, at *11 n.4 (explaining same). The Houston First Court of Appeals and multiple federal courts have expressly decided whether delegation clauses included waiver by litigation conduct. *See Jetall*, 2022 WL 17684340, at *11 n.4 (concluding where neither the arbitration provision nor the delegation clause specifically mentioned who decided waiver by litigation conduct, the parties did not "clearly and unmistakably delegate

14

this issue of substantive arbitrability to the arbitrator"); *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 803–04 (5th Cir. 2017) (concluding there was no "clear and unmistakable evidence" the parties intended to arbitrate litigation-conduct waiver where agreement did "not explicitly mention litigation-conduct waiver"); *Qazi v. Stage Stores, Inc.*, No. 4:18-CV-0780, 2020 WL 1321538, at *5 (S.D. Tex. Mar. 17, 2020) (mem. op. and order) (concluding the delegation clause did not contain "clear and unmistakable evidence" of parties' intent to arbitrate litigation-conduct waiver where it never mentioned litigation-conduct waiver); *Tellez v. Madrigal*, 292 F.Supp.3d 749, 756–57 (W.D. Tex. 2017) (same). They have uniformly determined that where a delegation clause generally refers arbitrability decisions to the arbitrator but does not mention litigation-conduct waiver, the issue of litigation-conduct waiver remains one for the court to decide. *See Jetall*, 2022 WL 17684340, at *7; *Vine*, 689 F. App'x at 803–04; *Qazi*, 2020 WL 1321538, at *5; *Tellez*, 292 F.Supp.3d at 756–57. We find their reasoning persuasive.

Despite the ability to delegate certain matters of gateway arbitrability, courts have explained that "where arbitration agreements divest courts of power, courts have still been able to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Qazi*, 2020 WL 1321538, at *5 (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Other courts have determined parties may delegate the issue of waiver by litigation conduct

to the arbitrator, but the arbitration agreement's delegation clause "must contain clear and unmistakable evidence 'of the parties' intent to arbitrate this issue specifically." *Jetall*, 2022 WL 17684340, at *11 n.4. (quoting *Qazi*, 2020 WL 1321538, at *5). Since waiver by litigation conduct is one presumptively for the courts, if the parties desire to overcome this presumption and delegate it, they must do so by clear and express language. *See id.*; *Qazi*, 2020 WL 1321538, at *5. If the arbitration agreement omits any mention of waiver, the issue has not been clearly and unmistakably delegated to the arbitrator. *See Qazi*, 2020 WL 1321538, at *5. The delegation clause before us does not mention litigation waiver at all, and conspicuously absent is language that would overcome the presumption that the court will decide whether a party has waived its right to enforce the arbitration provision by its litigation conduct. *See id.*

We turn briefly to the parties' discussion of the AAA rules mentioned in the arbitration provision. The Supreme Court of Texas recently held that "as a general rule, an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration." *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 708 (Tex. 2023). Still, the express language of the parties' agreement did not adopt the AAA Commercial Rules or require that they be used. Here, the arbitration provision only says the

16

parties "may choose" the AAA or "any other organization" subject to Baytown Nissan's approval. The arbitration provision also instructs that if the "chosen arbitration organization's rules" conflict with the Arbitration Agreement, then the Arbitration Agreement controls. The agreement's language provides that AAA rules were merely one option, so we reject Baytown Nissan's argument the AAA rules require the litigation waiver issue to be submitted to the arbitrator.

For the reasons outlined above, we conclude that the question about whether Baytown Nissan waived the right to compel arbitration by virtue of its litigation conduct is an issue for the trial court to decide. Neither the arbitration agreement nor the delegation clause mention waiver by litigation conduct, and there is no "clear and unmistakable evidence" overcoming the presumption the court will decide that issue. *See Jetall*, 2022 WL 17684340, at *7; *Vine*, 689 F. App'x at 803–04; *Qazi*, 2020 WL 1321538, at *5; *Tellez*, 292 F.Supp.3d at 756–57; *see also G.T. Leach*, 458 S.W.3d at 520 (explaining why courts decide issue of waiver by litigation conduct); *Perry Homes*, 258 S.W.3d at 588–89 (same).

## D. Hargroder established the affirmative defense of waiver by litigation conduct.

We now turn to whether Hargroder met her burden to establish the affirmative defense of waiver by litigation conduct. The parties do not dispute that the arbitration agreement signed by Hargroder and Baytown Nissan is valid, so "'the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing

17

arbitration.'" *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397–98 (Tex. 2020) (quoting *J.M. Davidson, Inc.*, 128 S.W.3d at 227). "Waiver is 'an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Conn Appliances, Inc. v. Puente*, No. 09-18-00326-CV, 2020 WL 4680283, at *4 (Tex. App.—Beaumont Aug. 13, 2020, no pet.) (mem. op.) (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). The reasoning behind a waiver finding lies in the "inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration . . . .'" *In re Citigroup Glob. Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding) (quoting *Perry Homes*, 258 S.W.3d at 597); *see also Puente*, 2020 WL 4680283, at *4.

Historically, waiver by litigation as an affirmative defense required the party opposing arbitration to show both: 1) the party seeking arbitration substantially invoked the litigation process; and 2) it prejudiced the party opposing arbitration. *See Bonsmara Nat. Beef Co.*, 603 S.W.3d at 395 (citation omitted); *Perry Homes*, 258 S.W.3d at 589–90, 593; *BBX Operating, LLC v. Am. Fluorite, Inc.*, No. 09-17-00245-CV, 2018 WL 651276, at *6 (Tex. App.—Beaumont Feb. 1, 2018, no pet.) (mem. op.); *see also Rivas v. Molina*, No. 08-23-00102-CV, 2024 WL 647656, at *3 & n.3 (Tex. App.—El Paso Feb. 15, 2024, no pet. h.) (mem. op.). "When courts consider allegations of such a waiver, '[t]here is a strong presumption' against it

18

under the FAA." *RSL Funding v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006)). The presumption applies in close cases. *Perry Homes*, 258 S.W.3d at 593. Courts look at the totality of the circumstances and decide this issue on a case-by-case basis. *See Pippins*, 499 S.W.3d at 430; *Perry Homes*, 258 S.W.3d at 591; *BBX Operating*, 2018 WL 651276, at *6. The factors employed include: 1) how long the party moving to compel arbitration waited to do so; 2) the reasons for the delay; 3) whether and when the movant knew of the arbitration agreement during the delay; 4) how much discovery was conducted before moving to compel arbitration and whether discovery related the merits; 5) whether the movant requested disposition on the merits; 6) whether the movant asserted affirmative claims for relief in the trial court; 7) the extent of the movant's "engagement in pretrial matters" concerning the merits versus arbitrability or jurisdiction; 8) amount of time and expense the parties committed to litigation; 9) whether the discovery conducted would be unavailable or useful in arbitration; 10) whether activity would be duplicated in arbitration; and 11) when the case was to be tried. *G.T. Leach*, 458 S.W.3d at 512 (citing *Perry Homes*, 258 S.W.3d at 590–91); *see also Pippins*, 499 S.W.3d at 430 (citations omitted). Merely taking part in litigation is insufficient unless a party substantially invokes the judicial process to its opponent's detriment. *See In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759,

19

763 (Tex. 2006) (orig. proceeding) (citation omitted). Likewise, delay alone generally will not establish waiver. *Id.*

"Generally, no one factor, by itself, is dispositive." *Pippins*, 499 S.W.3d at 430. We recognize that waiver by litigation conduct is a high hurdle, and the party opposing a valid arbitration agreement based on waiver bears the burden of proving that defense. *See Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499–500 (Tex. 2015); *G.T. Leach*, 458 S.W.3d at 512; *In re Bruce Terminix*, 988 S.W.2d 702, 705 (Tex. 1998) (citation omitted) (noting "heavy burden of proof" required to show waiver of arbitration rights).

### 1. Substantial Invocation of the Litigation Process

We examine the totality of the factors to determine whether Baytown Nissan substantially invoked the litigation process. *See G.T. Leach*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590–92; *BBX Operating*, 2018 WL 651276, at *6.

Baytown Nissan did not just wait months or even a few years to move to compel arbitration—it waited four years and failed to explain this delay other than new counsel noticed there was an arbitration agreement. Baytown Nissan drafted the arbitration agreement, and we presume a party who can read a contract containing an arbitration agreement and signs it, knows its contents. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996); *see also BBX Operating*, 2018 WL 651276, at *6 ("[A] party who is aware of an arbitration clause, yet only files a

motion to compel arbitration after having engaged in discovery and filed pleadings with the trial court, and after having received an adverse ruling from a trial court, has substantially invoked the litigation process and thereby waived its right to arbitrate."). Courts have found waiver based on shorter periods of delay coupled with other factors. *See, e.g.*, *Perry Homes*, 258 S.W.3d at 596 (finding waiver where party delayed request for arbitration fourteen months after suing); *Buzbee v. Terry & Thweatt, P.C.*, No. 01-23-00123-CV, 2023 WL 7311212, at *5 (Tex. App.—Houston [1st Dist.] Nov. 7, 2023, no pet.) (mem. op.) (delay of two years coupled with other factors supported finding of waiver); *F.T. James Constr., Inc. v. Hotel Sancho Panza, LLC*, 657 S.W.3d 623, 632 (Tex. App.—El Paso 2022, no pet.) (concluding twelve-month delay considered with other factors weighed in favor of waiver); *Menger v. Menger*, No. 01-19-00921-CV, 2021 WL 2654137, at *5 (Tex. App.—Houston [1st Dist.] June 29, 2021, no pet.) (mem. op.) (finding six-month delay before requesting arbitration supported finding of waiver). This case was also three months from a trial setting. *See Perry Homes*, 258 S.W.3d at 596. We look at these factors proportionally and compare waiting four years after litigation began to compel arbitration to the three months before the trial setting. *See id.* at 596 n.92 (citing *In re Vesta Ins. Grp.*, 192 S.W.3d at 764); *F.T. James Constr., Inc.*, 657 S.W.3d at 632 (comparing months between initiation of lawsuit and motion to

21

compel arbitration with months remaining before trial date). This factor weighs in favor of waiver.

Next, we examine the activity and discovery in this case. "Generally, merely responding to discovery requests is insufficient to constitute a substantial invocation of the judicial process." *BBX Operating*, 2018 WL 651276, at *7 (citing *In re Bruce Terminix*, 988 S.W.2d at 704). Yet the record here shows Baytown Nissan also propounded two sets of requests for production, two sets of interrogatories, and request for disclosure to Hargroder, all of which went to the merits of the claims, which weighs against Baytown Nissan and in favor of waiver.[2] *See G.T. Leach*, 458 S.W.3d at 512–14 (considering how much discovery movant conducted before seeking arbitration and whether it went to the merits); *Perry Homes*, 258 S.W.3d at 595–96 (explaining discovery went to "about every aspect of the merits"). Also, Baytown Nissan deposed Hargroder and the salesperson who sold the vehicle to her, and their discovery addressed the merits, which weighs against Baytown Nissan and in favor of waiver. *See id*. Only after the trial court adversely ruled against Baytown Nissan by granting Hargroder's Motion to Compel the production of documents significant to her claims did the defendant move to compel arbitration. *See BBX*

---

[2] The record reveals that Baytown Nissan's First Set of Request for Production to Hargroder contained thirty-six requests and the Second Set of Request for Production contained eleven requests. Likewise, the combined sets of interrogatories Baytown Nissan propounded to Hargroder contained twenty-two requests.

*Operating*, 2018 WL 651276, at *6; *see also GRGP, Inc. v. Black Forest Holdings, Inc.*, No. 01-23-00314-CV, 2023 WL 8459522, at *6 (Tex. App.—Houston [1st Dist.] Dec. 7, 2023, no pet.) (mem. op.) (noting that party did not move to compel arbitration until the trial court adversely ruled against it, including finding that it intentionally spoliated evidence). These facts weigh against Baytown Nissan and favor waiver.

Hargroder acknowledges that the discovery that was the subject of the motion to compel could be useful in arbitration, which would weigh against waiver. *See Perry Homes*, 258 S.W.3d at 592; *In re Bruce Terminix*, 988 S.W.2d at 704. On balance and considering all the circumstances, as we must, the fact that discovery could be useful in arbitration does not outweigh the other factors that Baytown Nissan actively participated in the discovery process for years, only sought merits-based discovery, propounded multiple sets of requests, and deposed key witnesses.

We agree with Baytown Nissan that propounding discovery *alone* and delay *alone* are not enough to find that it substantially invoked the litigation process, but here the totality-of-the-circumstances weighs in favor of waiver. It is the combined force of 1) Baytown Nissan's unexplained delay of four years, 2) the length of that delay compared with the months to the trial date, 3) the presumption that it knew its contract forms contained an arbitration provision and was aware of the provision from the outset, 4) that it propounded multiple sets of merits-based discovery, 5) that

23

it deposed key witnesses, and 6) that it only sought to compel arbitration after the trial court adversely ruled against it on a Motion to Compel and required it to produce documents significant to Hargroder's claims that points us to our decision. *See id.* at 596–97; *BBX Operating*, 2018 WL 651276, at *6. Based on the totality of the circumstances, we conclude the trial court did not abuse its discretion in denying the request for arbitration because Baytown Nissan substantially invoked the judicial process in a manner inconsistent with the right to arbitrate. *See Perry Homes*, 258 S.W.3d at 596; *BBX Operating*, 2018 WL 651276, at *6.

### 2. Prejudice[3]

"In the context of waiver of the right to arbitrate, prejudice generally focuses on the inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 (Tex. App.—Houston [14th Dist.] June 27, 2023, pet. denied) (mem. op.) (citing *G.T. Leach*, 458 S.W.3d at 515; *Perry Homes*, 258 S.W.3d at 597).

---

[3]Recently, the United States Supreme Court held a federal court cannot "condition a waiver of the right to arbitrate on a showing of prejudice." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). The plaintiff argues *Morgan* dispensed with the prejudice requirement in a waiver by litigation conduct analysis in cases under the Federal Arbitration Act. *See id.* The Texas Supreme Court has not spoken on the prejudice prong since *Morgan*. Nevertheless, because the record before us shows both substantial invocation of the litigation process and prejudice, we find it unnecessary to decide that issue.

24

Relevant to the prejudice issue are considerations of delay, expense, or damage to another party's legal position. *See id.*; *see also Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014); *Perry Homes*, 258 S.W.3d at 597. Two critical factors in determining whether a party was prejudiced by the opposing party's delay in asserting arbitration are (1) expenses incurred by the party during the delay; and (2) the effect on the parties' legal positions, including whether the party moving for arbitration would gain an unfair advantage by switching forums from litigation to arbitration. *Momentum Project Controls, LLC*, 2023 WL 4196584, at *5 (citing *Perry Homes*, 258 S.W.3d at 597).

Baytown Nissan argues that Hargroder failed to present any evidence of prejudice. The court in *Perry Homes* explained that a nonmovant need only prove substantial invocation of the judicial process that caused prejudice, not precisely how much it cost. 258 S.W.3d at 599–600. "A party opposing arbitration is not always required to prove the cost of the extensive discovery in order to prove prejudice." *Ellman v. JC Gen. Contractors*, 419 S.W.3d 516, 522 (Tex. App.—El Paso 2013, no pet.) (citing *Perry Homes*, 258 S.W.3d at 599–600); *see also Green v. Velocity Invs., LLC*, No. 05-20-00795-CV, 2022 WL 3655232, at *6 (Tex. App.—Dallas Aug. 25, 2022, no pet.) (mem. op.) (citations omitted). Thus, even without specific evidence of discovery costs or attorneys' fees, Hargroder "may demonstrate prejudice on the

25

face of the record." *Archimedes, Inc. v. Russell*, No. 01-21-00222-CV, 2022 WL 2024851, at *4 (Tex. App.—Houston [1st Dist.] June 7, 2022, no pet.) (mem. op.).

"Cost is only one dimension of prejudice." *Green*, 2022 WL 3655232, at *6. If the movant uses an arbitration agreement to tactically switch from one forum to another, the nonmovant may show prejudice. *See Perry Homes*, 258 S.W.3d at 599–600 (prejudice found where party manipulated litigation for one's advantage and another's detriment); *Green*, 2022 WL 3655232, at *6 (prejudice found given thirteen-month delay and damage to legal position seeking arbitration on "eve of trial"); *Archimedes, Inc.*, 2022 WL 2024851, at *5 (prejudice found by considering expenses, potential damage to opposing party's legal position by switching to arbitration a month before trial after a nineteen-month delay); *Ellman*, 419 S.W.3d at 522 (finding prejudice where party initiated merits discovery and waited to demand arbitration until trial strategy was revealed through fact and expert witness lists). If a party seeks to compel arbitration following an adverse ruling in the trial court, the non-movant may be prejudiced by a change in its legal position. *See Perry Homes*, 258 S.W.3d at 597; *Green*, 2022 WL 3655232, at *6; *Ellman*, 419 S.W.3d at 522; *see also Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 791, 795 (Tex. App.—El Paso 2015, no pet.). The unfairness results from a party's attempt "to have it both ways by switching between litigation and arbitration to its own advantage[.]" *Perry Homes*, 258 S.W.3d at 597; *see Hogg*, 480 S.W.3d at 790–91.

26

As the Court explained in *Perry Homes*, "'a party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party.'" 258 S.W.3d at 597 (quoting *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 n.5 (1st Cir. 2005)). Under those circumstances, the party opposing arbitration suffers harm to its legal position. *Id.*; *see also Hogg*, 480 S.W.3d at 791. The *Hogg* court found prejudice where Ms. Hogg did not move for arbitration until she lost a discovery dispute and was "faced with the near-certainty of having a sanctions order entered against her." *Hogg*, 480 S.W.3d at 796. There was no pending sanctions order here, but Baytown Nissan lost a discovery dispute that resulted in it having to produce documents significant to Hargroder's claims.

This Court has recognized that generalized complaints about delay and expense are not enough without explanations and evidence. *See In re Vesta Ins. Grp.*, 192 S.W.3d at 763; *In re Citgo Petroleum*, 248 S.W.3d 769, 778 (Tex. App.—Beaumont 2008, org. proceeding) (citations omitted). That said, the record before us establishes more than generalized complaints. Hargroder did not provide an affidavit in the trial court outlining her costs and expenses, but her Response to the Motion to Compel Arbitration explained that she spent over $3,500 related to litigation that she would not have incurred had Baytown Nissan timely demanded arbitration. Hargroder also asserted that Baytown Nissan benefitted from the trial court

discovery, that all the pretrial activity went to the case's merits, and that "[s]ignificant time and expense" had already been incurred. She focused on the discovery process and pointed to the dispute that required her to file a Motion to Compel. Hargroder argued in her Response that "the undersigned has devoted dozens and dozens of hours to drafting pleadings, drafting discovery, responding to discovery, taking depositions, preparing a motion to compel, attending a motion to compel hearing," among the other things involved in litigating the case. The evidence she attached to her Response included the trial court's Order granting her Motion to Compel Discovery and the discovery requests that were the subject of the Motion to Compel. This evidence shows that the trial court ordered Baytown Nissan to produce documents responsive to Plaintiff's Third Request for Production and that the trial court overruled all Baytown Nissan's exceptions, except two. The only objections the trial court sustained limited the timeframe of documents responsive to Hargroder's request to five years for two of her requests.

The record shows the parties conducted significant pretrial proceedings and discovery over the four years before the arbitration demand. It was only after the trial court ruled against Baytown Nissan on Hargroder's motion to compel and required the company to produce documents significant to Hargroder's claims that Baytown Nissan filed its motion to compel arbitration. The documents the trial court ordered produced included documents that went to the dealership's knowledge that

28

the truck was not new and employee personnel files. Less than a month after being ordered to produce the additional documents Baytown Nissan moved to compel arbitration, and it sought arbitration even though the case had been set and reset for trial. Even when Baytown Nissan filed its motion to compel arbitration, the motion was filed just three months before the scheduled trial setting.

We conclude that the trial court could have concluded that Hargroder had been prejudiced by Baytown Nissan's attempt to manipulate the litigation process to its advantage by demanding arbitration after an unexcused four-year delay, three months before a scheduled trial setting, and after the trial court granted Hargroder's Motion to Compel. *See Perry Homes*, 258 S.W.3d at 597; *Green*, 2022 WL 3655232, at \*6; *Ellman*, 419 S.W.3d at 522; *Hogg*, 480 S.W.3d at 791, 795; *Archimedes, Inc.*, 2022 WL 2024851, at \*4–5. "Appellees were not required to detail the extent of prejudice, only that prejudice resulted." *BBX Operating*, 2018 WL 651276, at \*8 (citing *Perry Homes*, 258 S.W.3d at 599).

On this record, we cannot say the trial court erred in concluding that Baytown Nissan waived its right to arbitrate by substantially invoking the judicial process to Hargroder's detriment. The trial court could have reasonably concluded that Baytown Nissan's "'attempt to have it both ways by switching between litigation and arbitration to its own advantage'" resulted in "inherent unfairness" to Hargroder. *See In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (orig.

29

proceeding) (quoting *Perry Homes*, 258 S.W.3d at 597); *BBX Operating*, 2018 WL 651276, at *8; *Hogg*, 480 S.W.3d at 791, 795; *Archimedes, Inc.*, 2022 WL 2024851, at *4–5.

We overrule Baytown Nissan's sole issue.

## IV. Conclusion

Having overruled Baytown Nissan's sole issue, we affirm the trial court's Order Denying Baytown Nissan's Motion to Compel Arbitration.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on February 29, 2024
Opinion Delivered March 14, 2024

Before Golemon, C.J., Johnson and Wright, JJ.